IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM KEY,

        Plaintiff,

v.                                                                                                                         No. CIV 17-1171 RB/KRS

BUTCH'S RAT HOLE & ANCHOR
SERVICE, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court on Defendant's Motion for Partial Summary Judgment, filed on March 30, 2018 (Doc. 20), and Defendant's Motion to Disregard or Strike Plaintiff's Untimely Responses to Defendant's Motion for Partial Summary Judgment, filed on June 18, 2018 (Doc. 31). Jurisdiction arises under 28 U.S.C. § 1332.[1] Having considered the submissions of counsel and relevant law, the Court will **DENY** both motions.

       Plaintiff and all putative class members worked for Butch's Rat Hole & Anchor Service, Inc. (Defendant) laying pipe for oil and gas wells. This lawsuit arises out of a disagreement about whether the workers were entitled to overtime pay under the New Mexico Minimum Wage Act (MWA). Because Plaintiff has come forward with evidence that creates a genuine issue of material fact, the Court will deny the motion for summary judgment.

---

[1] According to Plaintiff's Complaint, this putative class action involves over 100 class members, at least one of whom resides in New Mexico. (Doc. 1 (Compl.) ¶ 10.) Defendant is a Texas corporation. (*Id.* ¶ 9.) The parties do not dispute that the amount in controversy exceeds $75,000. (*See id.* ¶ 10.)

1

## I. Factual Background[2]

Defendant is a Texas oilfield service company that provides services to oil and gas industry customers. (*See* Docs. 1 (Compl.) ¶ 2; 20 at 2 ¶ 1; 20-1 ¶ 2.) Defendant employed William Key (Plaintiff) from November 2014 through August 2016. (Doc. 29-1 ¶ 1.) Plaintiff has filed a class action complaint alleging that Defendant failed to pay certain "non-exempt workers" (also referred to as "Field Workers") overtime hours in violation of the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-22(D). (*See* Compl. ¶¶ 2–6, 8.) The Field Worker positions represented in the declarations Plaintiff submitted include Casing Floor Hands, Derrick Hands, Stabbers, Tool Haulers, Crew Haulers, and Relief Operators. (*See* Docs. 29-1–29-4.) Defendant moves for partial summary judgment and asks the Court to dismiss Plaintiff's claim only with respect to those Field Workers who were employed as Casing Floor Hands. (*See* Doc. 20 at 1.)

During the time period covered by this lawsuit (*see* Compl. ¶ 8), Casing Floor Hands received several different types of pay,[3] two of which are relevant to this motion: (1) "Footage Pay," which is calculated on a per-foot-of-pipe-laid basis; and (2) "Location Hours Pay" (also referred to as "Exceeded Hours Pay"), which is calculated on an hourly basis. (*See* Docs. 20-1 ¶¶ 6, 8; 29-1 ¶ 3; 29-2 ¶ 3.) Defendant's payment structure[4] worked as follows: Defendant allotted a certain number of hours for its workers to lay pipe (also referred to as "running casing") on each customer's project, based on Defendant's estimate that workers can lay approximately 1,000 feet

---

[2] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to the Plaintiff. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court recites only that portion of the factual and procedural history relevant to this motion.

[3] Defendant contends that it "paid its Casing Floor Hands exclusively on a piecework or flat rate basis." (Doc. 20-1 ¶ 3.) The Court finds that the evidence submitted contradicts this assertion.

[4] Defendant submitted an undated example of a "Wage Statement" form that outlines its payment structure. (*See* Doc. 20-1-1.) Plaintiff, however, asserts that he does not recall seeing the Wage Statement exhibit or anything similar to it when he worked for Defendant. (Doc. 29-1 ¶ 8.)

of pipe per hour. (*See, e.g.*, Doc. 29-1 ¶ 3.) Plaintiff asserts that Defendant added some additional hours to each bid to allow time for "rigging up and rigging down." (*Id.*) The total number of hours bid gave Defendant the maximum "Footage Pay" it would pay out to its Casing Floor Hands. (*Id.*) If the project exceeded this set number of bid hours, Defendant then paid Casing Floor Hands the hourly "Location Hours Pay" rate for all hours worked over the bid hours. (*Id.*; *see also* Doc. 20-1 ¶ 8.)

Plaintiff asserts that at times, the Casing Floor Hands had to wait before beginning or resuming their duties at a customer's well location. (Doc. 29-1 ¶ 3.) Defendant required the Casing Floor Hands to remain at the job site during these unproductive times.[5] (*Id.*) If this unproductive time occurred within Defendant's bid hours and Casing Floor Hands were still being paid under the Footage Pay structure, they were not compensated for the down time.[6] (*Id.* ¶¶ 3, 7.)

Both parties submitted sample pay stubs from the relevant time period. (*See* Docs. 20-1-2; 29-5–29-6.) Plaintiff's four pay stubs demonstrate that, at least for these particular paychecks, Plaintiff's Location Hours Pay accounted for anywhere from 15.5% to 22.1% of his total pay. (*See*

---

[5] Defendant contends that it "did not require Casing Floor Hands to spend nonproductive, uncompensated time waiting at the jobsite." (Doc. 20-1 ¶ 11.) Plaintiff disputes Defendant's assertion and presents declarations from two former Casing Floor Hands (William Key and William Ty Neal) who allege that they were required to wait at job sites during unproductive times. (*See* Docs. 29-1 ¶ 3; 29-2 ¶ 3.) The Court finds that this dispute is material to its decision.

[6] Plaintiff attested that in addition to his duties laying pipe at customer locations, he was responsible for transporting necessary tools and equipment to and from the customer's well location. (Doc. 29-1 ¶ 5.) Plaintiff describes these pre- and post-drive duties in his declaration and states that he was not paid for completing the duties. (*Id.* ¶¶ 5–6.) Defendant disputes Plaintiff's assertions regarding these duties. (*See* Doc. 20-1 ¶¶ 9–10.) While there is an issue of fact about these pre- and post-drive duties, the Court finds that the issue is inapposite to its decision. *See, e.g., Casias v. Distrib. Mgmt. Corp., Inc.*, No. CV 11-00874 MV/RHS, 2013 WL 12091857, at *8 (D.N.M. Mar. 27, 2013) (discussing plaintiffs' pre- and post-delivery duties and finding that "[t]he Court need not consider this additional argument regarding active duties because the Court already has concluded that a material factual question precluding summary judgment exists").

Doc. 29-5.) The Location Hours Pay accounted for 16.9% of the total year-to-date pay as shown on the employee's paycheck that Defendant submitted.

## II. Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id*. The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

## III. The Court will deny Defendant's motion for partial summary judgment.

The MWA "generally requires employers to pay overtime to employees who work more than 40 hours per week." *Casias v. Distrib. Mgmt. Corp., Inc.*, No. CV 11-00874 MV/RHS, 2013 WL 12091857, at *5 (D.N.M. Mar. 27, 2013) (citing N.M. Stat. Ann. § 50-4-22(D)). "The Act, however, contains several exemptions from the definition of 'employee.'" *Id.* (citing N.M. Stat. Ann. § 50-4-21(C)). The MWA defines the term "employee" as "an individual employed by an employer." N.M. Stat. Ann. § 50-4-21(C). Relevant to this lawsuit, however, the Act excludes from that term "salespersons or employees compensated upon piecework, flat rate schedules or commission basis." *Id.* § 50-4-21(C)(5)).

Plaintiff contends that Defendant violated § 50-4-22(D) when it failed to pay its Field Workers, including Casing Floor Hands, overtime pay. (Compl. ¶¶ 1, 45–46.) Defendant contends that Casing Floor Hands are excluded from the definition of "employee" because Defendant pays them "*exclusively* on a piecework or flat rate basis" pursuant to § 50-4-21(C)(5). (Doc. 20-1 ¶ 3 (emphasis added); *see also* Doc. 20 ¶ 6.) Plaintiff disagrees, noting that Casing Floor Hands were paid under both a piecework schedule *and* an hourly schedule, as they received "Location Hours Pay" on certain projects. (Doc. 30 at 4.)

It is Defendant's burden "to prove an employee meets an exception" under the MWA. *See Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150, 1155 (D.N.M. 2017) (citations omitted). "Exemptions from the New Mexico Minimum Wage Act are strictly and narrowly construed against employers." *Casias*, 2013 WL 12091857, at *5 (citing *State ex rel. State Labor Comm'r v. Goodwill Indus.*, 478 P.2d 543, 545 (N.M. 1970) (internal citations omitted)). "Thus, an employer asserting an exemption defense must prove that the exemption 'unmistakably' includes the employee whom the employer claims to be exempt from the Act." *Id.* (quoting *State Labor Comm'r*, 478 P.2d at 545).

The MWA "does not define the terms 'piecework' or 'flat rate.' The common definition of piecework, however, is 'work done by the piece and paid at a set rate per unit.'" *Id.* (quoting Merriam Webster's Collegiate Dictionary, 938 (2003 11th ed.)). Plaintiff does not dispute that Defendant's Footage Pay structure is based on a piecework or flat rate payment system. (*See* Doc. 30 at 7.) As Defendant paid the Casing Floor Hands a set rate per unit of pipe laid, the Court agrees that Footage Pay meets the definition of piecework or flat rate pay pursuant to § 50-4-21(C)(5).

Not only did Defendant pay Casing Floor Hands on a piecework basis, however, it also paid them an hourly wage when Defendant exceeded its bid hours on a project. The Court finds it curious, then, that Defendant maintains it paid Casing Floor Hands *exclusively* on a piecework basis. (*See* Docs. 20 ¶ 6; 20-1 ¶ 3.) Plaintiff argues that this "mixed-status system . . . does not fall within the [MWA's] piecework or flat rate pay exclusion . . . ." (Doc. 30 at 8.) Defendant believes Plaintiff's interpretation of the exception is too narrow and urges the Court to reject "the extreme position that the MWA exempts only workers paid exclusively flat-rate or piecework for every component of pay . . . ." (Doc. 32 at 8, 9.) Defendant cites two cases in support of its position.

Defendant primarily relies on an order published in *Corman v. JWS of N.M., Inc.*, No. CIV 15-0913 JB/SMV, 2017 WL 5152171 (D.N.M. Mar. 13, 2017). (*See* Docs. 20 at 6; 32 at 3.) *Corman* also involves a collective action under the MWA for overtime wages, and the defendants there moved for summary judgment on the basis that the plaintiff truck drivers were exempt under § 50-4-21(C)(5). *Corman*, 2017 WL 5152171, at *1. The plaintiff truck drivers argued that because they were paid an hourly rate for certain tasks, such as washing and maintaining their trucks, they were not exempt from the MWA's overtime provision. *See Corman*, No. CIV 15-0913 JB/SMV, Mot. for Partial Summ. J. at *4 n.5 (D.N.M. June 17, 2016). The defendants argued that any "hourly pay was *de minimis* as compared with" the commission-based pay. *Id.* The *Corman* Court

6

apparently agreed, as it granted the defendant's motion for summary judgment on the plaintiffs' MWA claim. *See Corman*, 2017 WL 5152171, at *1.

Defendant urges the Court to rely on *Corman* to find that the hourly pay Plaintiffs received in this case was *de minimis* and, therefore, the MWA's overtime provision is inapplicable. (*See* Doc. 32 at 4.) Defendant asserts that the *Corman* "Court found the plaintiffs were not covered by the MWA and granted summary judgment in favor of the defendants despite it being **undisputed** that *more than half* of the plaintiffs' pay was according to an hourly pay rate." (*Id.* (bolding added).) Defendant does not cite to any document, but the Court takes notice that Defendant is referring to a statement contained in the *Corman* plaintiffs' cross-motion for summary judgment. *See Corman*, No. CIV 15-0913 JB/SMV, Pl.'s Mem. in Support of his Cross Mot. for Partial Summ. J. on Def.'s Exemption Defense, at *6 (D.N.M. June 17, 2016) ("Drivers are paid on an hourly basis for about 50% of the jobs they are assigned, and on a bid basis for about 50% of the jobs they are assigned.") (citation omitted). Defendant's citation to this "undisputed fact" is disingenuous at best, since the *Corman* defendants *explicitly* argued that the proffered fact was indeed *disputed*. *See id.*, Defs. JWS's & KPK's Resp. to Pl.'s Cross Mot. for Partial Summ. J., at 2–3 (D.N.M. July 1, 2016) ("Response: Inaccurate. For jobs *charged to the customer* on an hourly basis, Plaintiffs received 25% of [defendants'] transportation charge to the customer.") (citations omitted). Under the defendants' interpretation of this fact, even though the defendants charged some *customers* on an hourly basis, the plaintiffs received a 25% *commission* of the total charge— *not* hourly pay. *See id.*

The *Corman* defendants also demonstrated that the plaintiffs received very little in hourly pay compared with what they received as a commission or flat rate for their driving jobs: for example, only 2% of one plaintiff's total annual pay reflected the hourly pay rate, as opposed to

7

the commission/flat rate pay. *Corman*, No. CIV 15-0913 JB/SMV, Mot. for Partial Summ. J. at *4 n.5. Thus, the defendants maintained, plaintiffs received commission/flat rate pay 98% of the time, not 50% of the time. *See id.* Defendant's reliance on *Corman* to establish that the Plaintiff's hourly pay rate here is *de minimis* is misplaced. The undisputed facts here demonstrate that Plaintiffs received hourly pay for 15–22% of their total salary, a much higher number than the 2% in *Corman*. (*See* Docs. 20-1-2; 29-5; 29-6.)

The Court is reluctant to rely on the *Corman* decision, because Judge Browning's order granting the *Corman* defendants' motion for summary judgment is devoid of legal analysis and notes that "[t]he Court will, at a later date, issue a Memorandum Opinion more fully detailing its rationale for [its] decision." *Corman*, 2017 WL 5152171 at *1 n.1. Judge Browning has not yet published a Memorandum Opinion. As the Court explains above, however, Defendant misstates the facts in *Corman*, and the Court is able to distinguish *Corman* without guessing at Judge Browning's reasoning.

Defendant next cites to *Olivo v. Crawford Chevrolet Inc.*, 799 F. Supp. 2d 1237 (D.N.M. 2011). The *Olivo* defendants paid the plaintiffs, an autopainter and a bodyman, a flat rate per job to work on cars. *Id.* at 1239–40. The defendants also required the plaintiffs to remain on the job site even when they weren't working on a project, but the defendants did not pay plaintiffs for this downtime, which added up to approximately 10–15 hours per week. *Id.* at 1240. The plaintiffs alleged that the defendants violated the MWA by failing to pay them for these unproductive hours. *Id.* at 1239, 1242. The court stated that, "[a]lthough not explicit, Plaintiffs' argument appears to be that Defendants altered their piecework employee status by compelling them to remain on the premises even when no assignments were available." *Id.* at 1242. "Based on the limited record"

8

on summary judgment, the *Olivo* Court found that "there is some evidence that Plaintiffs are either mixed-status employees or non-piecework employees." *Id.*

Defendant acknowledges the *Olivo* decision but focuses on Judge Black's findings of fact and conclusions of law after trial in *Olivo*. (Doc. 20 at 8–9 (citing *Olivo v. Crawford Chevrolet, Inc.* (*Olivo II*), No. CV 10-782 BB/LFG, 2012 WL 12897385 (D.N.M. Jan. 12, 2012)).) There, Judge Black found that while the plaintiffs were paid on a piecework basis and were not compensated for downtime, the MWA "excludes 'employees compensated upon piecework, flat rate schedules or commission basis,' and thus [was] not applicable to Plaintiffs." *Olivo II*, 2012 WL 12897385, at *1–3 (quoting NMSA 1978 § 50-4-21(C)(5) (2008)).

Defendant argues that "Plaintiff's assertion of unpaid waiting and preparatory time in this case is precisely what the Court found existed in *Olivio* [sic] *II*." (Doc. 32 at 8 (citing *Olivo II*, 2012 WL 12897385, at *2).) The Court disagrees. It is true that Plaintiffs have demonstrated they were not paid for unproductive waiting time when that time fell within Defendant's bid hours and Casing Floor Hands were still being paid under the Footage Pay structure. (Doc. 29-1 ¶¶ 3, 7.) But the Court can draw a reasonable implication that Plaintiffs *were* paid for unproductive waiting time when that time fell outside of Defendant's bid hours. (*See* Doc. 30 at 10; *see also* Doc. 20-1 ¶ 8 (Defendant paid Location Hours pay as "an additional payment for after bid hours *or hours when Casing Floor Hands' work was delayed*") (emphasis added).) In other words, if the unproductive time occurred after the bid hours had expired, then the Casing Floor Hands were compensated at the Location Hours Pay rate. (*Id.*) This difference is significant and distinguishes this action from *Olivo*.[7]

---

[7] Additionally, the Court hesitates to rely on Judge Black's decision in *Olivo* because there is no legal analysis relevant to the conclusion of law about the MWA that would help guide the Court in this case. *See Olivo II*, 2012 WL 12897385, at *3. Moreover, Judge Black made his findings of fact and conclusions of law after trial. "[T]he Court looks at evidence offered in support of (or opposition to) a motion for summary

9

As the court found in *Casias*, "[a]t this stage in the litigation, the Court must tip the scales in favor of Plaintiff[] as the part[y] opposing summary judgment." 2013 WL 12091857, at *6 (relying on *Olivo* to deny defendant's motion for summary judgment under the MWA) (citation omitted). "Moreover, the Court is required to construe the Section 50-4-21(C)(5) exemption to the Wage Act narrowly and cannot grant summary judgment in Defendant's favor unless the exemption 'unmistakably' includes Plaintiff[]." *See id.* (citing *State Labor Comm'r*, 478 P.2d at 545 (internal citation omitted)). Based on the foregoing, the Court finds that Plaintiff has come forward with evidence sufficient to create a genuine dispute of fact with respect to whether Casing Floor Hands are truly exempt from the MWA.

## IV. The Court will deny Defendant's motion to disregard or strike the response.

Plaintiff received three extensions to file his response to Defendant's motion. (*See* Docs. 22; 25; 27.) In its order granting Plaintiff's third request for an extension, the Court stated that "[n]o further extensions will be granted. (Doc. 27.) On June 13, 2018, at 11:59 p.m., the proverbial eleventh hour, Plaintiff filed his response. (*See* Doc. 28.) He filed the exhibits to his response seven minutes later, at 12:06 a.m. on June 14, 2018. (*See* Doc. 29.)

Unbeknownst to Plaintiff at the time, he had inadvertently filed a draft of his response, rather than the final version. (*See* Doc. 39 at 1.) When he discovered his error the next day, he filed the final draft of the response. (*See id.* at 2; *see also* Doc. 30.) Defendant now asks the Court to strike Plaintiff's late response. (Doc. 31.) Because Plaintiff attempted to comply with the Court's order and file his response on June 13, 2018, and because Defendant has not been prejudiced by Plaintiff's late filing of the final version of his response on June 14, 2018, the Court will deny Defendant's motion to strike.

---

judgment differently than it looks at evidence offered at trial." *In re Tiger Petroleum Co.*, 319 B.R. 225, 234 (Bankr. N.D. Okla. 2004).

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 20) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Disregard or Strike Plaintiff's Untimely Responses to Defendant's Motion for Partial Summary Judgment (Doc. 31) is **DENIED**.

**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**