IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM KEY,

        Plaintiff,

vs.

BUTCH'S RAT HOLE & ANCHOR
SERVICE, INC.,

        Defendant.

Case No. 2:17-cv-01171 RB-KRS

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

Plaintiff William Key ("Plaintiff" or "Named Plaintiff") moves this Court to approve preliminarily the class action settlement in this matter. [Exhibit 1 - Proposed Settlement Agreement].[1] Defendant Butch's Rat Hole & Anchor Service, Inc. ("BRHAS" or "Defendant") is unopposed to this motion. In support of this motion, Plaintiff asserts as follows:

### I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks preliminary approval of the proposed Settlement Agreement ("Settlement Agreement" or "Agreement"), attached as Exhibit 1. Under the terms of the Agreement, Defendant will pay a maximum not to exceed the Gross Settlement Amount detailed in the attached Agreement to resolve the New Mexico Minimum Wage Act, NMSA 1978, § 50-4-19, *et seq.* ("NMMWA") claims brought by the Named Plaintiff and Settlement Class Members (collectively, "Settlement Class Members"). There are 160 Settlement Class Members, and they are identified by name on Exhibit 2.

---

[1] This Exhibit was filed under seal in accordance with the court's February 20, 2020, Order. (Dkt. No. 76).

Because the proposed Settlement Agreement is "fair, reasonable and adequate," provides Settlement Class Members with substantial monetary relief and satisfies all other criteria for preliminary approval, the Court should grant this motion. Plaintiff requests the Court enter an Order, in the form accompanying this Motion, that among other things: (1) grants preliminary approval of the proposed Settlement Agreement; (2) certifies the Rule 23 Settlement Class for purposes of the settlement only; (3) approves the proposed Settlement Notices and directs implementation of the notice program; (4) appoints J. Derek Braziel of Lee & Braziel, LLP and Jack Siegel of the Siegel Law Group, PLLC, as Class Counsel and preliminarily approves attorneys' fees, litigation expenses, and costs; (5) approves the Named Plaintiff as Settlement Class Representative and provides a Service Award for the individual; and (6) sets the date for the Final Approval Hearing.

## II.    FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

William Key began this action on November 28, 2017. (Dkt. No. 1). He filed the lawsuit to recover alleged unpaid overtime wages under New Mexico state law. *Id.* The case was filed as a Rule 23 class action for the NMMWA. *Id.* Plaintiff alleges that he was owed unpaid overtime pay. *Id.* Defendant denies that Plaintiff or members of the Settlement Class were improperly paid and further contends its payment of these workers was done on a piece rate basis, thus exempting them from the NMMWA. (Dkt. No. 9, filed 12.27.17).

Defendant operates in Texas, New Mexico, North Dakota, Kansas and Pennsylvania. Plaintiff contends Defendant employed non-exempt workers but failed to properly pay them overtime or at the legally required rate in violation of the NMMWA. (Dkt. No. 1). Defendant denies Plaintiff's allegations and contends that Plaintiff and all members of the Settlement Class were properly paid under all applicable state and federal law. (Dkt. No. 9).

III.     **COURSE OF LITIGATION**

This is the follow up case to litigation which was filed and concluded in federal district court in Texas (*Gutierrez v. Butch's Rat Hole & Anchor Service, Inc*., No. 7:2016-cv-00314, W.D. Tex., Judge Junell). (Exh. 3, Braziel Dec., ¶ 9). *Gutierrez* involved a claim for unpaid overtime wages under the FLSA. *Id.* A settlement of that case was reached on or about November 9, 2017. That settlement did not include, and specifically excluded, the Plaintiffs' claims for unpaid overtime wages under the New Mexico Minimum Wage Act ("NMMWA"). *Id.*

Key filed this action on November 28, 2017. *See* Dkt. No. 1 (the "Complaint"). In the Complaint, Plaintiff alleged that Defendant failed to count all of the hours worked by Plaintiff and others similarly situated and failed to properly calculate the overtime rate applicable to Plaintiff and those similarly situated. *Id.* He sought back wages, liquidated damages, attorney's fees, and costs pursuant to the NMMWA. *Id.* Defendant denied the allegations in the Complaint and asserted several defenses to Plaintiff's claims, including that he is entitled to any relief whatsoever. (Dkt. No. 9 (Answer to Complaint).

The Court held an initial scheduling conference on February 22, 2018, and entered a class certification scheduling order on March 6, 2018. Dkt. Nos. 14 & 18. The scheduling order that resulted set a deadline for Plaintiffs to file a motion for class certification pursuant to Fed. R. Civ. P. 23. *Id.* On March 30, 2018, Defendant filed a Motion for Partial Summary Judgment. (Dkt. No. 20). From March to September 2018, the Parties engaged in discovery concerning class certification issues. During this time, as reflected on the docket, the Parties sought court assistance to resolve discovery disputes. On September 5, 2018, the Court denied Defendant's Motion for Partial Summary Judgment. (Dkt. No. 49). As the class certification discovery period was ending, the Parties conferred on the Motion for Class Certification and the overall status of the case. As a

result of these discussions, the Parties determined that focusing on settlement should be the next step.

On September 25, 2018, the Parties filed a motion to stay the proceedings so the Parties could focus on settlement discussions. The Court granted the stay on September 26, 2018. Dkt. No. 55. During the course of the settlement discussions, the Parties exchanged additional information on an informal basis, including a damage model which was based on the information provided in this case and in the *Gutierrez* litigation. (Exh. 3, Braziel Dec., ¶ 12). The Parties kept the court informed by way of several status reports. (Dkt. Nos. 57, 59, 68, 69).

The Parties were finally able to mediate with the assistance of a private mediator, Jack Wisdom, who is well-versed in wage and hour law. At the end of the mediation, the mediator issued a mediator's proposal and gave the Parties time to consider the proposal. On October 29, 2019, the Parties informed the Court that they have reached an agreement and will begin preparing the settlement documents. (Dkt. No. 72). The Court set February 14, 2020, as the deadline to file the necessary documents for settlement of the case. (Dkt. No. 74). Between November 2019 and February 2020, the Parties exchanged drafts of the settlement agreement, including proposed changes requested from both sides. On February 14, 2020, the Parties field a motion to seal the settlement agreement. (Dkt. No. 75). The Court granted that motion on February 20, 2020. (Dkt No. 75.)

Plaintiff claimed that during the relevant time period, Defendant failed to track the number of hours Plaintiffs worked in an accurate manner. (Exh. 3, Braziel Dec., ¶ 14). Plaintiff also claimed that footage pay was omitted from the calculation of the regular rate. *Id.* Using the information gathered in *Gutierrez*, Plaintiffs were able to estimate the missing hours and able to calculate the correct rate of pay for approximately half of the individuals included in this matter.

*Id.* Based on the data from *Gutierrez* case and the data provided in this case, Plaintiffs were able to calculate the damages for this case, including accounting for an offset, where applicable, from the first case. *Id.*

On August 27, 2019, the Parties met with mediator Jack Wisdom in Albuquerque. *Id.* at ¶ 15. Wisdom's experience in wage and hour cases as a practitioner and as a mediator bridged what was a very large gap in the Parties' respective positions. *Id.* Given the disputed nature of the claims and damages, the settlement of this case was certainly an arm's length settlement. *Id.*

The settlement agreement in this case waives not only state law rights under the NMMWA, but also settles wage and hour rights under the FLSA. *Id.* at ¶ 16. The settlement agreement does not waive any rights guaranteed by the FLSA or the NMMWA. *Id.* Rather, the settlement resolves a *bona fide* dispute over the number of hours worked and the compensation to be paid to Plaintiffs. *Id.*

## IV.   **SUMMARY OF PROPOSED CLASS SETTLEMENT**

As a result of the settlement discussion and mediation, the Parties have identified a settlement class that consists of:

> The Class Representative and all of the Casing Floor Hands who worked in New Mexico who are listed on Exhibit A [to the Settlement Agreement], unless an individual elects to opt-out of the settlement. James Prescott, Raymond Turner, Mike Ciuba, Justin Paiz, and Jimmy Prescott are not "Settlement Class Members" as they have previously opted out of the settlement and resolved their claims against Defendant in an action captioned *James Prescott, Raymond Turner, Mike Ciuba, Justin Paiz, and Jimmy Prescott v. Butch's Rat Hole & Anchor Service, Inc.*, No. MO:19-CV-00009 DC that was previously pending in the United States District Court in the Western District of Texas, Midland/Odessa Division.

The proposed monetary settlement shall not exceed the Gross Settlement Amount detailed in the Settlement Agreement. Exh. 1. Plaintiffs' counsel intends to request a fee not to exceed $158,000.00, plus litigation expenses and costs costs not to exceed $15,000.00, to be

drawn from the Gross Settlement Amount. Exh. 3, Braziel Dec., ¶ 25. Plaintiffs estimate the cost of administration for a third party administrator will not exceed $15,000, also to be drawn from the Gross Settlement Amount. *Id.* Additionally, Plaintiff will request approval of a service payment not to exceed $7,500 for the Named Plaintiff, also to be drawn from the Gross Settlement Amount. *Id.* at ¶ 24. Before final approval of the settlement, the Settlement Class Members will be sent a Notice outlining the terms of the settlement and will be provided information on how individuals in the Class can exclude themselves from the settlement or otherwise object to the settlement. Exh. 1. The Notice for which Court approval is sought is attached as Exhibit 4.

## V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. Settlement of Class Action Litigation is Favored.

Rule 23(e) of the Federal Rules of Civil Procedures requires judicial approval for any compromise of claims brought on a class basis. Federal courts strongly favor and encourage settlements, particularly in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The traditional means for handling wage claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. The proposed settlement, therefore, is the best vehicle

for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

Approval of a proposed settlement is a matter within the broad discretion of the district court. *In re Warner Comms. Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986); *In re Michael Milken*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). "Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Market -Markers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*In re NASDAQ*"). "First, the court reviews the proposed terms of settlement and makes a preliminary determination of the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Pub. Offering See. Litig.,* 226 F.R.D. 186, 191 (S.D.N.Y. 2005) ("*In re Initial Pub. Offering*") (citing Manual for Complex Litigation, Fourth § 21.632 (204)). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ*, 176 F.R.D. at 102.

"If the court preliminarily approves the settlement, it must direct the preparation of notice, the proposed settlement, and the date of the final fairness hearing." *In re Initial Pub. Offering*, 226 F.R.D. at 192. Class members may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate. Id.; (citing Manual for Complex Litigation, Fourth §§ 21.632-21.635 (2004)).

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from

the settlement. See 3 B.J. Moore, Moore's Federal Practice ¶23.80[2.-1], at 23- 479 (2d ed. 1993); *In re Prudential*, 163 F.R.D. at 210 (noting that the court can fully evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submission by proponents and potential opponents of the settlement and the reaction of the Class Members"). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement … may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.,* 323 F. Supp. 364, 372 (E.D. Pa 1970). See also, *In re Initial Public Offering*, 226 F.R.D. at 191 (fairness hearing affords class members "an opportunity to present their views of the proposed settlement").

Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. See, *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). As the court explained in *Lyons v. Marrud, Inc.,* [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,525 (S.D.N.Y. 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case." *Id*. at 93,520.

In this action, Defendant has agreed to pay a substantial sum to the Settlement Class Members given the considerable risks the Named Plaintiff and Settlement Class Members face in continued litigation. Class Counsel believe, based on their calculations, that the Net Settlement Fund provides for recovery of virtually all of an appropriately discounted recovery even *after* the payment of attorney's fees, litigation expenses, administration costs, and service payments.

8

Plaintiff's Counsel believes this is a fair, reasonable, and adequate result. (Ex. 3, Braziel Decl., ¶ 29; *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[2] After accounting for Class Counsel's projected costs and fees, the settlement administrator's costs, and service payments to the Named Plaintiffs, the average Individual Settlement Award is $1,246.87. This is reasonable and adequate given the defenses that Defendant has raised, including that Settlement Class Members were outside of the group of individuals to whom the NMMWA applied. *See* Defendant's Answer, Dkt. No. 69.

In addition, the distribution of the Settlement Class Fund is fair, as all Settlement Class Members will share in the Fund on a *pro rata* basis based on the amount of time they worked in an eligible position. See Ex. 1 and Exh. 3, ¶ 20, Settlement Agreement. This fair result supports preliminary approval.

### B. A Class Should Be Conditionally Certified for Settlement Purposes

The Settlement Agreement contemplates the parties will apply to the Court for the conditional certification of a Class for settlement purposes. Conditional certification of a Settlement Class is appropriate here as it meets all of the requirements of Fed. R. Civ. P. 23.

---

[2] *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

The threshold consideration for approval of any class settlement is whether the class properly can be certified. *Duhaime v. Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 67 (D. Mass. 1997). Here, the parties have agreed that the case should be certified for settlement under Fed. R. Civ. P. 23. As demonstrated below the elements of Fed. R. Civ. P. 23(a) and (b)(3), numerosity, commonality, typicality, adequacy, predominance, and superiority, are satisfied. Under the standards set forth in *Amchem Products v. Windsor*, 521 U.S. 591, 619 (1997), manageability concerns that would be relevant if a case were to be tried do not prevent certification of a Settlement Class.

### 1. Federal Rule of Civil Procedure 23(a):

Numerosity requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23. The test for impracticability of joinder is met if the class is "large." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Here, the potential Class consists of more than 150 individuals.

Commonality requires that there be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23. Commonality is satisfied here for settlement purposes. The Rule 23 Settlement Class is comprised of similar individuals who worked in New Mexico as exempt casing floor hands. Defendant classified all Settlement Class Members as exempt from the overtime provisions of federal and state law. The Named Plaintiff claims that Defendant had a common policy or practice of failing to pay these individuals overtime pay at one and one-half times their regular rates of pay when they worked more than 40 hours per week, despite their performance of non-exempt duties. This is sufficient to establish commonality. *Healy,* 296 F.R.D. at 591.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23. At issue is whether the Named

Plaintiffs and all other Settlement Class Members were properly classified as exempt from the overtime provisions of the NMMWA, and whether they were required to work in excess of forty (40) hours per week. This is sufficient to meet the requirement of typicality. *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (typicality is meant to ensure that the claims of the class representative have the "same essential characteristics as the claims of the class at large.").

Adequacy of Representation requires that the Class Representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. Here, Plaintiffs have demonstrated that they dos not have any interests that are antagonistic to the Class and that they have been diligent in fulfilling their duty as Class Representative.  Moreover, Class Counsel have extensive experience in class action litigation and are well-versed in the issues surrounding the underlying claims.  *See* Exhibit 3, Braziel Dec., ¶¶ 1-8.  The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 443 (S.D.N.Y. 1995)). The Named Plaintiffs have no antagonistic interests that go to the subject matter of the lawsuit. The Named Plaintiffs held the same job position or similar job positions, and were paid in the same manner, as the proposed Settlement Class Members.

### 2. Federal Rule of Civil Procedure 23(b)(3):

Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication

of the controversy." The proposed Settlement Class meets the standards of predominance and superiority for the purposes of settlement. Common questions of law and fact predominate because the proposed Settlement Class is limited to a specific group of individuals who claim they were subjected to systemized practices and standardized conduct that violated the NMMWA. *See, In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 344 (N.D. Ill. 2010).

In addition, the fact that the Parties are asking to certify the Settlement Class for settlement purposes only weighs in favor of finding that the superiority and predominance elements are satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *Smith v. Sprint Commc'n Co.,* 387 F.3d 612, 614 (7th Cir. 2004); *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. at 344. Because Rule 23(b)(3) certification is proposed in the context of a settlement, the "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc.,* 521 U.S. at 620 (citation omitted). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004).

The element of superiority is met for settlement purposes because the proposed settlement class is the most efficient way to resolve the claims of the Named Plaintiff and Rule 23 Settlement Class Members. *In re AT&T Mobility Wireless Data Services Sales Litigation,* 270 F.R.D. at 344. In this proceeding, the Parties will be allowed to resolve the claims of more than 150 persons in one coordinated proceeding, thus conferring significant benefits upon each Settlement Class Member.

### C.  The Court Should Approve the Settlement of the FLSA Collective Action.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n. 8 (11th Cir.1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353–54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354. For the reasons explained above, the Parties' Settlement easily meets this standard and warrants approval under the FLSA.

### D.  Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

Plaintiff requests preliminary approval of up to forty percent of the common fund as an attorney fee. Counsel places this request herein with the understanding that the Court may wish to reserve ruling on the issue of fees until a final fairness hearing after class members have an opportunity to respond.

#### 1.  The Court Should Award Attorneys' Fees from a Percentage of the Fund.

The Court should award attorneys' fees as a percentage of the total fund made available to the Settlement Class Members. "While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund." *Barbosa v. Nat'l Beef Packing Co., LLC.*, No. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015) (citations omitted). Courts in the Tenth Circuit "typically appl[y] the percentage of the fund method when awarding fees in common fund, FLSA collective actions." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7).

When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

(1980); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (citation omitted).

It is especially appropriate to use a common fund approach in cases based on fee-shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton, v. G.M. Corp.*, 860 F.2d 250, 256 (7th Cir. 1988). "Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Barbosa*, 2015 WL 4920292, at *11 (citing *Bruner*, 2009 WL 2058762, at *7). Here, the settlement releases Participating Settlement Class Members' statutory claims to fees under the FLSA and state wage and hour laws.[3]

### 2. **The Results and Benefits Conferred Upon the Settlement Class Justify the Fee Award**.

This Settlement will provide the Settlement Class with substantial benefits while avoiding significant risks, as discussed *supra*. Further, the Settlement shows no signs of collusion, as it was vigorously negotiated with the assistance of a well-respected class action employment law mediator. (Exh.3, Braziel Dec., ¶ 13; *see also Dearaujo v. Regis Corp.*, No. 2:14-cv-01408, 2016 WL 3549473, at *10 (E.D. Cal. June 30, 2016)).

### E. **Preliminary Approval of the Settlement is Within the Court's Discretion and is Warranted Here.**

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential Sec. Inc. Limited Partnership Lit.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). At the preliminary approval phase of

---

[3]   *See*, *e.g.*, 29 U.S.C. § 216(b).

the class action settlement process, the Court's function is to ascertain whether the proposed settlement is within the range of possible approval and whether it is thus reasonable to notify the class members of the proposed settlement and proceed with a fairness hearing. *Id.* Where, as here, "the proposed settlement[] appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In Re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citation omitted).

Preliminary approval of the Settlement is warranted in this case. Plaintiffs and Defendant are intimately familiar with the claims and defenses in this action. The Settlement Agreement was reached after extensive, arms-length negotiations between the parties, who were represented by competent counsel and overseen by a mediator who is expert in wage and hour mediations. (Exh. 3, Braziel Dec., ¶ 13)   If finally approved, the Settlement Agreement will conclude this litigation. Plaintiffs and their counsel believe that, given the uncertainties of litigation, the probability of extensive delays in achieving final resolution through litigation, the defenses asserted, and the substantial benefits provided by the Settlement Agreement, this Settlement is in the best interests of the Class. (Exh. 3, ¶ 19). Defendant, while denying liability, believes that this compromise is in its best interests as well.

Because this Settlement involves a Fed. R. Civ. P. 23 class action, it will not be final until (1) the Notice disclosing Class Members' right to opt-out of or object to the Settlement is mailed to Class Members and the Notice Procedures are fulfilled; (2) the Court holds a Final Fairness Hearing to decide whether to approve the Settlement Agreement as fair, adequate and reasonable in light of the parties' submissions and to consider any objections from Settlement Class

Members; (3) the Court concludes that the Settlement is fair, adequate and reasonable; and (4) the Settlement becomes "final" as defined in the Settlement Agreement. At the Final Fairness Hearing, after Notice and briefing by the parties and any objectors, the Court has the discretion to finally approve the Settlement if the Court finds it to be fair, reasonable and adequate for the Class Members.

## VI. CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Plaintiffs respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement Agreement; (2) certify the Rule 23 Settlement Class for purposes of the settlement only; (3) approve the proposed Settlement Notices and directs implementation of the notice program; (4) appoint J. Derek Braziel of Lee & Braziel, LLP and Jack Siegel of the Siegel Law Group, PLLC, as Class Counsel and preliminarily approves attorneys' fees, litigation expenses, and costs; (5) approve the Named Plaintiff as Settlement Class Representative and provides a Service Award for the individual; (6) set the date for the Final Approval Hearing; and (7) approve the FLSA settlement

*/s/ J. Derek Braziel*
J. Derek Braziel
LEE & BRAZIEL, L.L.P.
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Telephone: (214) 749-1400
Facsimile: (217) 749-1010
www.overtimelawyer.com

JACK SIEGEL
Co-Attorney in Charge
Texas Bar No. 24070621
SIEGEL LAW GROUP PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
P: (214) 790-4454
www.4overtimelawyer.com

ATTORNEYS FOR PLAINTIFFS<br>AND THE SETTLEMENT CLASS

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed through the Court's CM/ECF filing system on March 5, 2020, and that all counsel will receive notice of this filing through the District of New Mexico's ECF as of today's date.

/s/ J. Derek Braziel
J. Derek Braziel

## **CERTIFICATE OF CONFERENCE**

I certify that I conferred with opposing counsel about the relief sought in this motion and was advised that Defendant is not opposed to it.

/s/ J. Derek Braziel
J. Derek Braziel