IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM KEY,

                Plaintiff,

    vs.

BUTCH'S RAT HOLE & ANCHOR
SERVICE, INC.,

            Defendant.

Case No.  2:17-cv-01171 RB-KRS

**JOINT MOTION FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT**

*/s/ J. Derek Braziel*
**J. DEREK BRAZIEL**
Texas Bar No. 00793380
jdbraziel@l-b-law.com
Braziel Dixon, LLP
1910 Pacific Avenue, Suite 12000
Dallas, Texas 75201
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

**JACK SIEGEL**
Texas Bar No. 24070621
jack@siegellawgroup.biz
Siegel Law Group, PLLC
2820 McKinnon, Suite 5009
Dallas, Texas 75201
(214) 706-0834 phone
(469) 339-0204 fax
www.siegellawgroup.biz

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Charlotte Lamont*
**CHARLOTTE LAMONT**
LITTLER MENDELSON, P.C.
201 Third Street NW, Suite 500
Albuquerque, NM  87102
505.944.9682 (Telephone)
505.213.0415 (Facsimile)
clamont@littler.com

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed through the Court's CM/ECF filing system on the date file-stamped thereon, and that all counsel will receive notice of this filing through the District of New Mexico's ECF as of today's date.

*/s/ J. Derek Braziel*
J. Derek Braziel

Plaintiff William Key ("Plaintiff," "Named Plaintiff," or "Class Representative") along with Defendant Butch's Rat Hole and Anchor Service ("Butch's" or "Defendant") (collectively "the Parties") move this court for final approval the class action and collective action settlement in this matter, and assert as follows:

## I.   INTRODUCTION

The Parties seek final approval of the proposed Settlement Agreement for class and collective action Claims ("Settlement Agreement" or "Agreement"), previously submitted to the Court as Exhibit 1 to the Motion for Preliminary Approval. (ECF No. 77).  Under the terms of the Agreement, Defendant will pay an amount not to exceed the Settlement Amount detailed in the Agreement to resolve all claims brought by the Named Plaintiff, Opt-In Plaintiffs, and Settlement Class Members (collectively, "Settlement Class Members") – 160 people identified on Exhibit 2 to the Motion for Preliminary Approval.  (ECF No. 77). – of this Rule 23, opt-out class action brought pursuant to the New Mexico Minimum Wage Act, N.M. Stat. Ann. §50-4-19, *et seq.* ("NMMWA" or "State Wage Law").

Because the proposed Settlement Agreement is "fair, reasonable and adequate," provides Settlement Class Members with sufficient monetary relief and satisfies all other criteria for final approval, the Court should grant this motion at the appropriate time.  Plaintiff requests the Court enter an Order in the form accompanying this Motion that, among other things: (1) grants final approval of the proposed Settlement Agreement; (2) permanently certifies the Rule 23 Settlement Class for purposes of the settlement only; (3) approves the settlement of claims arising under the NMMWA; (4) approves the payment of Service Award to the Named Plaintiff; (5) approves Plaintiffs' Counsel's ("Class Counsel") requested attorneys' fees and litigation expenses/costs (6) approves payment to the Third-Party Administrator; and (7) dismisses this matter with prejudice.

## II.    FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

William Key began this action on November 28, 2017.  (Dkt. No. 1).  He filed the lawsuit to recover alleged unpaid overtime wages under the State Wage Law.  *Id.*  The case was filed as a Rule 23 class action for the NMMWA.  *Id.*  Plaintiff alleges that he was owed unpaid overtime pay.  *Id.*  Defendant denies that Plaintiff or members of the Settlement Class were improperly paid and further contends its payment of these workers was done on a piece rate basis, thus exempting them from the NMMWA.  (Dkt. No. 9, filed 12.27.17).

Defendant operates in Texas, New Mexico, North Dakota, Kansas and Pennsylvania.  Plaintiff contends Defendant employed non-exempt workers but failed to properly pay them overtime or at the legally required rate in violation of the NMMWA.  (Dkt. No. 1).  Defendant denies Plaintiff's allegations and contends that Plaintiff and all members of the Settlement Class were properly paid under all applicable state and federal law.  (Dkt. No. 9).

## III.    COURSE OF LITIGATION

This is the follow up case to litigation which was filed and concluded in federal district court in Texas (*Gutierrez v. Butch's Rat Hole & Anchor Service, Inc*., No. 7:2016-cv-00314, W.D. Tex., Judge Junell).  (Exh. 1, Braziel Dec., ¶ 9).  *Gutierrez* involved a claim for unpaid overtime wages under the FLSA.  *Id.*  A settlement of that case was reached on or about November 9, 2017.  That settlement did not include, and specifically excluded, the Plaintiffs' claims for unpaid overtime wages under the NMMWA.  *Id.*

Key filed this action on November 28, 2017.  *See* Dkt. No. 1 (the "Complaint").  In the Complaint, Plaintiff alleged that Defendant failed to count all of the hours worked by Plaintiff and others similarly situated and failed to properly calculate the overtime rate applicable to Plaintiff and those similarly situated.  *Id.*  He sought back wages, liquidated damages, attorney's fees, and

costs pursuant to the NMMWA.  *Id.*  Defendant denied the allegations in the Complaint and asserted several defenses to Plaintiff's claims, including that he is entitled to any relief whatsoever. Dkt. No. 9 ("Answer to Complaint").

The Court held an initial scheduling conference on February 22, 2018, and entered a class certification scheduling order on March 6, 2018.  Dkt. Nos. 14 & 18.  The scheduling order that resulted set a deadline for Plaintiffs to file a motion for class certification pursuant to Fed. R. Civ. P. 23.  *Id.*  On March 30, 2018, Defendant filed a Motion for Partial Summary Judgment.  Dkt. No. 20.  From March to September 2018, the Parties engaged in discovery concerning class certification issues.  During this time, as reflected on the docket, the Parties sought Court assistance to resolve discovery disputes.  On September 5, 2018, the Court denied Defendant's Motion for Partial Summary Judgment.  (Dkt. No. 49).  As the class certification discovery period was ending, the Parties conferred on the Motion for Class Certification and the overall status of the case.  As a result of these discussions, the Parties determined that focusing on settlement should be the next step.

On September 25, 2018, the Parties filed a motion to stay the proceedings so the Parties could focus on settlement discussions.  The Court granted the stay on September 26, 2018.  Dkt. No. 55.  During the course of the settlement discussions, the Parties exchanged additional information on an informal basis, including a damage model which was based on the information provided in this case and in the *Gutierrez* litigation.  (Exh. 1, Braziel Dec., ¶ 12).  The Parties kept the Court informed by way of several status reports.  Dkt. Nos. 57, 59, 68, 69.

The Parties were finally able to mediate with the assistance of a private mediator, Jack Wisdom, who is well-versed in wage and hour law.  At the end of the mediation, the mediator issued a mediator's proposal and gave the Parties time to consider the proposal.  On October 29,

2019, the Parties informed the Court that they have reached an agreement and will begin preparing the settlement documents. Dkt. No. 72. The Court set February 14, 2020, as the deadline to file the necessary documents for settlement of the case. Dkt. No. 74. Between November 2019 and February 2020, the Parties exchanged drafts of the settlement agreement, including proposed changes requested from both sides. On February 14, 2020, the Parties field a motion to seal the settlement agreement. Dkt. No. 75. The Court granted that motion on February 20, 2020. Dkt. No. 75.

Plaintiff claimed that during the relevant time period, Defendant failed to track the number of hours Plaintiffs worked in an accurate manner. (Exh. 1, Braziel Dec., ¶ 12). Plaintiff also claimed that footage pay was omitted from the calculation of the regular rate. *Id.* Using the information gathered in this case and in *Gutierrez*, Plaintiffs were able to estimate the missing hours and able to calculate the correct rate of pay for approximately half of the individuals included in this matter. *Id.* Based on the data from *Gutierrez* case and the data provided in this case, Plaintiffs were able to calculate the damages for this case, including accounting for an offset, where applicable, from the first case. *Id.*

On August 27, 2019, the Parties met with mediator Jack Wisdom in Albuquerque. *Id.* at ¶ 13. Wisdom's experience in wage and hour cases as a practitioner and as a mediator bridged what was a very large gap in the Parties' respective positions. *Id.* Given the disputed nature of the claims and damages, the settlement of this case was certainly an arm's length settlement. *Id.*

The settlement agreement in this case waives not only state law rights under the NMMWA, but also settles wage and hour rights under the FLSA. *Id.* at ¶ 16. The settlement agreement does not waive any rights guaranteed by the FLSA or the NMMWA. *Id.* Rather, the settlement resolves

a *bona fide* dispute over the number of hours worked and the compensation to be paid to Plaintiffs. *Id.*

As a result of the settlement discussion and mediation, the Parties identified a settlement class that consists of:

> The Class Representative and all of the Casing Floor Hands who worked in New Mexico who are listed on Exhibit A [to the Settlement Agreement], unless an individual elects to opt-out of the settlement. James Prescott, Raymond Turner, Mike Ciuba, Justin Paiz, and Jimmy Prescott are not "Settlement Class Members" as they have previously opted out of the settlement and resolved their claims against Defendant in an action captioned *James Prescott, Raymond Turner, Mike Ciuba, Justin Paiz, and Jimmy Prescott v. Butch's Rat Hole & Anchor Service, Inc.*, No. MO:19-CV-00009 DC that was previously pending in the United States District Court in the Western District of Texas, Midland/Odessa Division.

The proposed monetary settlement shall not exceed the Settlement Amount detailed in the Settlement Agreement. Exh. 1.

The Court preliminarily approved the Settlement Agreement for the Settlement Class as well as attorneys' fees not to exceed forty percent of the Settlement Amount, plus litigation expenses and costs not to exceed $15,000, the cost of administration for a third party administrator, and a Service Award not to exceed $7,500 for the Named Plaintiff.

## IV.    NEGOTIATED SETTLEMENT

The Parties elected to mediate this case and ultimately resolved it with the assistance of Mediator Jack Wisdom. The Parties had engaged in an informal exchange of information to estimate the alleged damages. *Id.* at ¶ 13. This included gathering and reviewing detailed payroll records for many of the class members. *Id.* Defendant provided this information to Plaintiffs, and Plaintiffs created a damage model to be used at mediation. *Id.* On August 27, 2019, the Parties mediated in Albuquerque. Mr. Wisdom is an accomplished mediator and over the last 10 years has been one of a handful of mediators who have concentrated a portion of their practice

on wage and hour litigation. *Id.* During the mediation, the Parties remained far apart on settlement terms. At the conclusion of the mediation, the mediator indicated he would present a mediator's proposal to both sides as a final attempt to resolve the case. Over the next days, the Parties resolved the case with the mediator's continued involvement. As a result, prior to the Final Approval Hearing, Settlement Class Members received a notice informing them that the matter had been resolved through settlement and informing them of the amount of funds they could receive.

### V.    SUMMARY OF PROPOSED CLASS SETTLEMENT AND DETAILS ON CLASS NOTICE, WITHDRAWALS, AND OBJECTIONS

The Parties agreed that the proposed monetary settlement would not exceed the Settlement Amount detailed in the Settlement Agreement. Dkt. No. 77-1 filed under seal. The Settlement Agreement provides that the Parties have agreed this amount is a reasonable amount for attorneys' fees and that litigation expenses and taxable costs not in excess of $15,000 shall be paid for the services provided by Class Counsel to the Class Representative and the Settlement Class Members. Additionally, the Settlement Agreement contemplates a service payment of $7,500 for the Named Plaintiff to be drawn from the Settlement Amount before the Settlement Payments are calculated. *Id.*

As the Court is aware, several data issues arose which delayed the settlement notice process. As a result, the final statistics concerning the mail out, number of unreachable Class Members, Opt-outs, and Objectors is not set at this time. The Parties will provide the Court with a Final Declaration from the Settlement Administrator within five days of the end of the 45-day notice period.

## VI.    CLASS COUNSEL CONTENDS THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A.    The Standard for Approving Class Action Settlement Agreements.

Fed. R. Civ. P. 23(e) provides that, before granting final approval of a settlement agreement, the Court must ensure that notice is provided to members of the plaintiff class, then conduct a hearing and thereafter find that the agreement is "fair, adequate, and reasonable." *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984).  "In determining whether the proposed settlement meets the standard for approval, the Court must first be concerned with the protection of the rights of the passive class members."  *See* 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1979.1 (2d ed. 1986 &. 2001 Supp.); *Johnson v. City of Tulsa*, 2003 U.S. Dist. LEXIS 26379 (N.D. Okla. May 12, 2003).

Decades ago, in *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984)*,* the Tenth Circuit identified the following four factors that a district court should consider in determining whether a proposed settlement is fair, reasonable, and adequate:

1.    Whether the proposed settlement was fairly and honestly negotiated;
2.    Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
3.    Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and,
4.    The judgment of the parties that the settlement is fair and reasonable.

In the ensuing 35 years, those four factors have been consistently applied. *See e.g. Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993); *Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002); *Tennille v. W. Union Co*., 785 F.3d 422, 434 (10th Cir. 2015); *Fager v. CenturyLink Communs.*, LLC, 854 F.3d 1167, 1174 (10th Cir. 2016).

The court also should "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1994).  "The

fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'"  *Ashley v. Regional Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Trust Fund*, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).  "It is the responsibility of the proponents of the settlement to provide sufficient evidence to support a conclusion that the settlement is fair..."  *Gottlieb*, 11 F.3d at 1015.

In determining whether to approve a negotiated settlement, the court must examine the agreement as a whole, rather than the individual sections, for overall fairness.  As the Ninth Circuit noted:

> While the court may either approve or deny the issuance of a consent decree, generally it is not entitled to change the terms of the agreement stipulated to by the parties. …  If the court discerns a problem with a stipulated agreement, it should advise the parties of its concern and allow them an opportunity to revise the agreement.  Ultimately, the district court is faced with the option of either approving or denying the decree …  "[T]he settlement must stand or fall as a whole."

*Colorado*, 937 F.2d at 509 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).  Further, the assessment of fairness includes:

> a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625.

There is strong judicial policy favoring approval of settlements in complex class action lawsuits.  "It is well-settled, as a matter of sound policy, that the law should favor the settlement

of controversies." *Grady v. De Ville Motor Hotel, Inc*., 415 F.2d 449, 451 (10th Cir. 1969); *see, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("Voluntary conciliation and settlement are the preferred means of dispute resolution."); *Wahlcometroflex, Inc. v. Westar Energy, Inc*., 773 F.3d 223, 229 (10th Cir. 2014) (public policy favors settlements); *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1102 (10th Cir. 2001); *see also,* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:55, at 178 (4th ed. 2002).

However, courts do sometimes reject settlement agreements. For example, in a New Mexico case, a three-judge panel deciding a Voting Rights Act case out of McKinley County rejected a proposed modified consent decree. *United States v. McKinley County*, 941 F. Supp. 1062, 1065-1066 (D. N.M. 1996) ("A consent decree is not merely a contract which the court perfunctorily approves upon the parties' request.").

Class Counsel contends the Agreement in this case meets and surpasses the legal standard for final court approval. For the reasons described below, analysis of each of the factors required by the Tenth Circuit supports granting final approval of the Agreement.

    **B.**    **Class Counsel Believes Each Factor Courts Consider in Determining Whether the Proposed Settlement Is Fair, Reasonable, and Adequate Supports Approval of the Agreement.**

    1.    <u>The Proposed Settlement Was Fairly and Honestly Negotiated.</u>

In this case, the Parties jointly seek to settle this matter and "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006). "First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Id*. at 693. Since 2017, the Parties have maintained their respective positions and zealously advocated contested issues regarding overtime wage liability.

Class Counsel believes the lengthy nature and detailed scope of the settlement process also indicates a fair and honest settlement was reached. Before formal and extensive litigation began, the Parties began discussing a framework for settlement based largely on the extensive work in the *Guiterrez* case. (Exh 1, Braziel Dec., ¶ 17).

After the Parties agreed on the scope of the class in this case, they engaged in an informal exchange of information to estimate the alleged damages. *Id.* at ¶ 13. This included gathering and reviewing detailed payroll records for the class members who participated in the *Guiterrez* litigation as well as the other potential class members. *Id.* Defendant provided this information to Plaintiff, and Plaintiff created a damage model to be used at mediation. *Id.* On August 27, 2019, the Parties mediated the case in Albuquerque, New Mexico with the assistance of Jack Wisdom. *Id.* Mr. Wisdom is an accomplished mediator and over the last 10 years has been one of a handful of prominent mediators to concentrate part of his practice on resolving wage and hour litigation. *Id.* At the conclusion of the full-day mediation when the Parties remained far apart, Wisdom made a mediators' proposal which was eventually accepted by both sides.

The amount of time, the amount of effort, the detailed review of the information exchanged, and the fact that it took a mediator's proposal to settle the case show that the Parties negotiated fairly and honestly. The settlement came only after a private mediation and several follow up discussions with the mediator. *See Lucas*, 234 F.R.D. at 693.

Finally, the Parties were represented by "counsel with expertise on the [wage and hour laws] and complex class action litigation." *Id.* These factors support the integrity of the parties' settlement negotiations. Where a settlement results from arm's length negotiations between experienced counsel after an exchange of significant informal discovery the Court may presume the settlement to be fair, adequate, and reasonable. *Id.*

2.    Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.45 (4th ed. 2002). Although it is not the role of the Court at this stage of the litigation to evaluate the merits, "it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *See Lucas*, 234 F.R.D. at 693-94. Rather, the Court must evaluate the probable outcome of litigation and the terms of the settlement and then weigh the remedies the class could secure from the settlement against the probable costs and results of litigation while not reaching "any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *See Officers for Justice*, 688 F.2d at 625. This case presented several serious questions of both law and fact which could have impacted the outcome of the litigation, and there is far from any guarantee that Plaintiffs "will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13, 2008 U.S. Dist. LEXIS 86741 at *36 (W.D. Okla. Oct. 27, 2008).

By way of example, Class Counsel contends that one significant issue in the litigation is whether Defendant had properly classified Plaintiffs as being outside the minimum wage and overtime provisions of the NMMWA. Defendant contended that it properly classified these individuals as outside the reach of the NMMWA. To assess the classification issue under this

law, a detailed analysis of the job duties performed by the Plaintiffs would have been necessary as would an analysis of how the individuals were paid. Plaintiffs contended that the manner which they were paid violated the NMMWA, and Defendants contended the opposite. Depending on the outcome of this issue alone, the entire class stood to recover nothing if the litigation went to conclusion and Defendants prevailed on the issue.

Another example issue is the number of hours worked by Plaintiffs. Defendant contended the number of hours over 40 in a week actually worked was minimal, while Plaintiffs contended it was substantial. The difference in the outcome of this one factor would have drastically affected the overall amount of the potential recovery. If the jury determined Plaintiffs did not work any overtime hours, Plaintiffs would have recovered nothing.

       3.    <u>Class Counsel Believes the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation.</u>

The Tenth Circuit has stated that the "value of an immediate recovery" means "the monetary worth of the settlement." *Gottlieb*, 11 F.3d at 1015. "That value is to be weighed not against the net worth of the defendant, but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.; see also, Wilkerson v. Martin Marietta Corp*., 171 F.R.D. 273, 283 (D. Colo. 1997). "By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief." *Lucas*, 234 F.R.D. at 694; *see also McNeely*, 2008 WL 4816510, at *13, 2008 U.S. Dist. LEXIS 86741, at *37 (finding that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted"). An evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties. Indeed, the very essence of a settlement agreement is compromise, "a yielding of

absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

As set forth in the previous section, just two of the many issues in this case present an all-or-nothing (or almost all-or-nothing) proposition for Plaintiffs. Yet, Defendant has agreed to pay a settlement amount to the Settlement Class Members even though the Named Plaintiff and the Class Members faced the risk of recovering nothing in continued litigation. The Settlement Fund provides for recovery of an appropriately discounted recovery even *after* the payment of attorney's fees, litigation expenses, administration costs, and service payments. (Exh. 1, Braziel Dec., ¶ 29). Class Counsel believes this is fair and adequate result given the risks to the Parties in this litigation.

4.      Class Counsel Believes the Settlement is Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695; *McNeely,* 2008 U.S. Dist. LEXIS 86741, at *37–*38 (same). One district court in the Tenth Circuit put it this way:

> When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. *See Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277 (S.D.N.Y. 1993) ("Absent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel."). Counsels' judgment as to the fairness of the agreement is entitled to considerable weight. *See Law v. National Collegiate Athletic Ass'n,* 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000).

*Marcus v. State of Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

In support of their appointment as class counsel, Plaintiffs' counsel submitted their qualifications and set forth their experience in this area of the law. Dkt. No. 61. The Court is therefore familiar with Class Counsels' qualifications. As set forth in the previous section and included in Class Counsels' declaration, Class Counsel believes the settlement is fair and

reasonable. (Exh. 1, Braziel Dec., ¶ 31). "Here, the parties' counsel—among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions— unanimously support this settlement." *Lucas*, 234 F.R.D. at 695. As such, this factor further supports granting final approval.

<h3 style="text-align:center">C.    <u>The Court Should Approve the Service Award to the Named Plaintiff</u>.</h3>

The Settlement Agreement provides for a modest incentive award for the Named Plaintiff. Incentive awards are typical in class action cases. *See* 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008). Courts have stated that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class. *See UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 F. App'x 232, 235–36 (10th Cir. 2009). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id.* at 235; *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, Case No. 09–cv–01543–REB–KMT2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.").

The Named Plaintiff was among the most active participants in the *Guiterrez* matter and has stayed actively involved in this matter. Throughout the litigation, he provided factual information and otherwise assisted counsel with the prosecution of the litigation. (Exh. 1, Braziel Dec. ¶30). In addition to the time and effort spent, Class Counsel believes the Named Plaintiff works in an industry in which the number of companies with this position is limited because of variations in the price of oil and other global economic factors. (*Id.*). Plaintiffs contend that

background checks and ready access to public records information on the Internet make the possibility of lost job opportunities very real in these circumstances. (*Id.*). Additionally, it is common in these cases for the Named Plaintiffs to agree to a general release of claims, in part, because they are being paid additional consideration in the Settlement Agreement. (*Id.*). Finally, the requested incentive award is reasonable and in line with similar awards approved in other cases. *See, e.g., In re Universal Service Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (granting $10,000 incentive award to subclass representative); *Lucken Family Ltd. Partnership*, 2010 WL 5387559, at *6 (approving $10,000 award); *Ponca Tribe of Indians*, 2009 WL 2836508, at *2 (approving incentive awards ranging from $1,000 to $15,000). Accordingly, the Court should approve the proposed incentive award to the Named Plaintiffs.

### D.    Class Counsel's Requested Fee.[1]

The Professional Services Agreement between Class Counsel and their clients provides for a contingency fee and the Court-approved Settlement Agreement provides for payment of the requested fee in an amount consistent with the contingency fee agreement. (Exh.1, Braziel Dec., ¶ 25). As set forth below, Class Counsel contend this represents a reasonable fee and should be approved by the Court. *Id.* As set forth in the Settlement Agreement, Defendant agrees the amount is reasonable. *Id.*

During the past three (plus) years of litigating this case along with the *Guiterrez* case, Class Counsel have not been paid for their services. (Braziel Decl., ¶ 26). This unpaid work to date includes: (1) interviewing witnesses and selecting class representatives; (2) preparing and filing the complaint and amended complaints; (3) analyzing and responding to a dispositive motion; (4)

---

[1] This section contains the positions, contentions, and arguments of Class Counsel. Defendant is not opposing Class Counsel's fee request.

engaging in extensive formal discovery and informal discovery for purposes of mediation; (6) reviewing documents related to class member pay; (7) analyzing pay records of approximately half of the Settlement Class Members; (8) participating in extensive settlement discussions; (9) preparing and circulating a detailed mediation statement and damages model; (10) analyzing and preparing rebuttal arguments to mediation positions; (11) participating in a face-to-face mediation facilitated by private mediator Jack Wisdom; (12) preparing and drafting settlement papers including motions for preliminary approval and for final approval; and (13) overseeing the Claims Administrator in the administration of Settlement Notices and claims.  In addition, Class Counsel advanced all litigation expenses and taxable costs on behalf of the Class in pursuit of their claims. *Id.*  Class Counsel explain herein that their efforts have been without compensation and their entitlement to be paid has been wholly contingent on obtaining recovery for the Plaintiffs. *Id.*

The Court preliminarily approved the Settlement Agreement—an agreement agreed to by the Class Representatives on behalf of the Class and by the Defendant.  ECF No. 79.  The preliminarily approved Settlement Agreement provides that Class Counsel will recover attorneys' fees, litigation expenses and taxable costs.  ECF No. 77-1, ¶ II.e.  The Settlement Agreement provides express authority for the requested fees and expense awards.  *Id.*  The requested fee percentage, forty percent of the Settlement Amount, is the same percentage set forth as the contingency fee negotiated between Plaintiff and the attorneys whom the Court appointed as Counsel.  In the Settlement Agreement, Defendant agreed that the amount set forth was "reasonable." *Id.*

       1.    <ins>The Tenth Circuit and District Courts in the Tenth Circuit Overwhelming Use the Percentage of Fund Method to Determine Reasonable Fees.</ins>

Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  In 2003,

Rule 23(h) was adopted to more specifically address fee awards in the class action setting. Rule 23(h) states, in relevant part, that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law .... " FED.R.CIV.P 23(h).  Generally, the Tenth Circuit reviews a district court decision awarding attorneys' fees for an abuse of discretion.  *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1148 (10th Cir.1990).

Class Counsel contend that their efforts have resulted in a common fund, which is set forth in the Settlement Agreement.  For over 40 years, the Supreme Court has held that when counsel obtain a common fund settlement, they may seek a reasonable attorneys' fee from the fund as whole.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n.l6 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class.").  The rationale behind allowing the Court to award attorneys' fees out of the common fund is that class counsel conferred a benefit to the class as a whole and should be compensated for that benefit.  "A litigant or a lawyer who recovers, preserves, or increases the value of a common fund, thereby benefitting other persons, may be reimbursed for reasonable fees and expenses from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. at 478.  The court awards class counsel a fee from the common fund based upon the court's analysis of the benefit and value the attorney added in obtaining the settlement for the class; the court "weighs the interests of the class in light of class counsel's efforts on their behalf."  *In re Copley Pharm., Inc.,* 1 F. Supp. 2d 1407, 1409 (D. Wyo. 1998).

Here, the reasonableness of the fee is tested under federal common law since federal claims were alleged and carry with them federal question jurisdiction.[2]  This methodology calculates the

---

[2] In *Chieftain Royalty Co. v. EnerVest Energy Institutional Fund XIII-A, L.P., et al.*, 861 F.3d 1182 (10th Cir. 2017), a two-judge panel of the Tenth Circuit held that, in diversity class-action cases, the federal court should look to state law for determining the reasonableness of class counsel's fee award.  Unlike *Nieberding* and *Chieftain v. EnerVest,*

fee as a reasonable percentage of the value obtained for the benefit of the class. *See Id.* at 454.

The Tenth Circuit has expressed a preference for determining the reasonableness of a fee award in

a common fund case utilizing the percentage of recovery method. *See Gottlieb*, 43 F.3d at 483;

*Brown*, 838 F.2d at 454. Courts in this District have acknowledged this preference and rejected

the application of lodestar analysis or a lodestar cross check when applying the percentage of fund

method. As Judge Parker recently explained:

> The percentage of the fund method is the appropriate means to determine a reasonable fee ... a lodestar analysis would not be helpful in setting or even evaluating a reasonable percentage of the Common Fund…. The percentage approach is also more efficient. Importantly, it aligns the interests of class counsel with the interests of the class because the more the class recovers, the more class counsel recovers.

*Ramah Navajo v. Jewell*, 167 F. Supp. 3d at 1241–42 (D.N.M. 2016). Other New Mexico District

Judges, including Judge Gonzales, similarly use the percentage of fund method and do not require

a lodestar crosscheck, which is significantly more work for the Parties and the courts. *Barela v.

Citi Corp.*, No. 1:11-cv-506-KG-GBW, ECF 93 (D.N.M Sept. 15, 2014) (awarding percentage of

fund totaling $133,333.33 in hybrid FLSA and Rule 23 wage and hour case <u>without</u> lodestar cross

check) (Gonzales, J.); *see also, Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1097

(D.N.M. 1999) (fee awards "in common fund cases ***should be evaluated*** using the percentage of

fund method ***without a lodestar analysis***.") (emphasis added); *Ramah Navajo Chapter v.

Kempthorne*, Case No. CIV 90-0957 LH/KBM2008 WL 11342943, at *5 (D.N.M. Aug. 27, 2008)

(approving percentage without lodestar cross check); *Robles v. Brake Masters Sys., Inc*., Case No.

CIV 10–0135 JB/WPL2011, WL 9717448, at *19 (D.N.M. Jan. 31, 2011) (approving fee <u>without</u>

lodestar cross check, where counsel reduced contingency fee for settlement and the percentage

this case was not a diversity case. So, the Court should use the percentage of the common fund method to determine reasonableness of the fee request, which the Tenth Circuit has used for decades.

requested was "within the range that other courts within the Tenth Circuit have approved); *Acevedo v. Sw. Airlines Co*., 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *1 (D.N.M. Dec. 10, 2019) (approving 33% award <u>without</u> lodestar analysis or lodestar crosscheck in wage and hour hybrid action), *report and recommendation adopted*, 2020 WL 85132 (D.N.M. Jan. 7, 2020); *Ramah Navajo Chapter v. Kempthorne*, 2008 WL 11342943, at *5 (D.N.M. Aug. 27, 2008) (approving fee <u>without</u> lodestar cross check); *Daye v. Cmty. Fin. Serv. Ctrs., LLC*, 1:14-cv-759-KK-KBM, ECF 195 (D.N.M. August 15, 2019) (awarding $440,000 fee <u>without</u> lodestar analysis); *J.O. v. Dorsey, et al*., No. 1:11-cv-254-MCA-GBW, ECF 157 (D.N.M. Nov. 19, 2014) (awarding 1/3 fee of fund, or $250,000 <u>without</u> lodestar analysis); *Willett v. Redflex Traffic Systems, Inc.*, No. 1:13-cv-1241-JCH-LAM (D.N.M. Nov. 24, 2016) (awarding $1,210,605.98 out of a $3.5 million dollar fund <u>without</u> lodestar cross check); *Dejolie v. T&R Market, Inc*., No. 1:17-cv-733-KK-SCY (D.N.M. Dec. 10, 2018) (awarding fees of $190,000 using the "percentage of fund method" <u>without</u> lodestar analysis); *Jones v. I.Q. Data Int'l, Inc*., No. 1:14-cv-130-PJK-GBW, ECF 65 (awarding 30% of common fund <u>without</u> lodestar analysis); *Yazzie v. Gurley Motor Co*., No. 1:14-cv-555-JAP-SCY, ECF 196 (D.N.M. Oct. 28, 2016) (awarding $173,750 as a percentage of fund <u>without</u> lodestar cross check).  District courts within the Tenth Circuit but outside of New Mexico agree.  *Chieftain Royalty Co. v. Marathon Oil Co.*, 2019 WL 7758915, at *9 (Mar. 8, 2019) (E.D. Okla. Mar. 8, 2019) (awarding 40% fee <u>without</u> lodestar cross check, explaining that the "lodestar method and lodestar cross-checks are a wasteful use of resources and are disfavored by the Tenth Circuit.") (collecting cases); *CompSource Oklahoma v. BNY Mellon, N.A.*, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.") (citing *Union Asset Mgmt. Holding A. G. v. Dell*,

*Inc.*, 669 F.3d 632, 644 (5th Cir. 2012)); *Fankhouser v. XTO Energy, Inc.*, 2012 WL 4867715, *3 (W.D. Okla. Oct. 12, 2012) (awarding 36% without lodestar cross check); *Droegemueller v. Petroleum Devel. Corp.,* 2009 WL 961539, *4 (D. Colo. Apr. 7, 2009) (awarding 33 1/3% <u>without</u> a lodestar cross check); *Lewis v. Wal–Mart Stores, Inc.,* 2006 WL 3505851, *2 (N.D. Okla. Dec. 4, 2006) (awarding 33 1/3% without calculating lodestar); *Williams v. Sprint/United Mgmt. Co*., 2007 WL 2694029, at *6 (D. Kan. Sept. 11, 2007) (awarding 35% fee <u>without</u> calculating lodestar); *Peck v. Encana Oil & Gas, Inc*., 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (37.5% fee without calculating lodestar in wage and hour hybrid action); *Farley v. Family Dollar Stores, Inc*., 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014) (30.3% fee <u>without</u> lodestar cross check in wage and hour hybrid action); *Chavez Rodriguez v. Hermes Landscaping, Inc*., 2020 WL 3288059, at *5 (D. Kan. June 18, 2020) (33% fee without calculating lodestar in wage and hour hybrid action); *Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (fees and costs of 39% of the fund <u>without </u>lodestar analysis in wage and hour hybrid action without lodestar cross check) (citing *Stuart J. Logan et al.*, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003) (reporting that the percentage of class recovery consumed by attorneys' fees in cases under $10 million averages between 30.4% and 31.9%, based on a survey of 1,120 cases).

Class Counsel contend that this Court should follow the direction provided by the Tenth Circuit and other district courts in this Circuit and use the percentage of fund method for awarding Class Counsels' attorneys' fees in this case, and Defendant does not oppose this request.

        2.   <u>The Requested Fee Award Is Well Within the Range of Percentage of Fund Awards.</u>

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for

their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Class Counsel's request for an award of attorneys' fees equal to 40% of the common fund is well within the range of prior percentage awards made by courts in this District and in the Tenth Circuit. *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis."); *Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498, at *1–2 (D. Colo. Apr. 28, 2017) (explaining forty percent fee falls within acceptable range in Tenth Circuit; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (finding 1/3 of $6 million dollar fund, or $2 million, in wage and hour case to be "well within the percentage range approved in similar cases") (collecting cases); *Campbell v. C.R. England, Inc.*, , 2015 WL 5773709, at *6 (D. Utah Sept. 30, 2015) (awarding 1/3 of $5,000 fund in FLSA collective action). *Blanco v. Xtreme Drilling & Coil Services, Inc.*, 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"); *Peck*, 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (finding 37.5% fee in wage and hour hybrid action to be "well within the range for a contingent fee award") (collecting cases); *Farley*., 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014) (30.3% fee of $2.3 million fund in wage and hour hybrid action); *Whittington,* 2013 WL 6022972, at * 6 (explaining that the fees and costs of 39% of the fund were "within the normal range for a contingent fee award" in wage and hour hybrid class action); *Shaulis v. Falcon Subsidiary LLC*, 2018 WL 4620388, at *2 (D. Colo. Sept. 26, 2018) (finding 1/3 of common fund to be reasonable because the award was similar to fee awards in "similar wage and hour cases in this District"); *Williams*, 2007 WL 2694029, at *6 (awarding 35% fee in employment class action); 4 *Newberg On Class Actions* § 14:6 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage

method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Enegren v. KC Lodge Ventures LLC*, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019) (awarding 40% of fund in wage collective action).

A 40% fee award is also consistent with the percentage of fund awards in hybrid Rule 23 state wage and hour/FLSA actions nationwide. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472 (S.D.N.Y 2013) (awarding $1.617 million in attorneys' fees in $4.9 million common fund settlement of overtime claims) (citing *Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); and *Clark v. Ecolab, Inc.,* No. 07 Civ. 8623(PAC), 2010 WL 1948198, at *8–9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait*, 2010 WL 2025106, at *9 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and 13 state wage and hour law off-the-clock case); *Duchene v. Michael Cetta, Inc.,* 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in hybrid tip misappropriation case); *Mohney v. Shelly's Prime Steak,* 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in hybrid wage case); *Abadeer, et al., v. Tyson, et al.* 3:09-cv-125 (M.D. Tenn. Oct. 17, 2014) (awarding fees in the amount of $2,583,333.00, which was equal to 33.33% of the common fund, in hybrid FLSA Rule 23 class action); *Braun v. Wal–Mart, Inc.,* 2009 WL 1592532 (Minn. Dist. Ct. June 1, 2009) (38% fee award in a $54 million settlement)).[3]

---

[3] *See also Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving attorneys' fee award of one-third of the total settlement amount in hybrid FLSA and Ohio and North Carolina state classes); *Kritzer v. Safelite Solutions*, LLC, 2012 WL 1945144 (S.D. Ohio May 30, 2012) (approving attorneys' fees and costs up to 52% of total recovery for hybrid FLSA collective and Ohio class action for unpaid overtime); *Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *6 (E.D. Mich. Jan. 31, 2014) ("Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit."); *Abadeer, et al., v. Tyson, et al.* 3:09-cv-125 (M.D. Tenn. Oct. 17, 2014) (awarding fees in the amount of $2,583,333.00, which was equal to 33.33% of the common fund, in hybrid FLSA Rule 23 class action);

    3.    <u>Class Counsel's Argument on the Standard for Assessing Fee Awards in Tenth Circuit.</u>

In *Gottlieb,* the Tenth Circuit directed that in determining a reasonable fee in a common fund case, "the court must consider the twelve *Johnson* factors" originally set forth by the Fifth Circuit. *Gottlieb,* 43 F.3d at 483 (citing *Johnson v. Georgia Highway Express. Inc.* 488 F.2d 714, 717-19 (5th Cir. 1974):

> The 12 Johnson factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee: (6) any prearranged fee -- this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation , and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client: and (12) awards in similar cases.[4]

Because the *Johnson* factors were developed in the context of a judgment in a case involving fee-shifting statute, the Tenth Circuit held that the scheme should be modified when applied in a common fund case to better fit the setting. *See Brown v. Phillips Petroleum Co*., 838 F.2d 451, 456 (10th Cir. 1988). Not all factors will apply in every case. *Id*., at 456; *Gudenkauf v. Stauffer Communications, Inc*., 158 F.3d 1074, 1083 (10th Cir. 1998) (trial court need not

---

*Clem v. KeyBank, N.A*., 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (awarding 1/3 of common fund for attorneys' fees); *Henry v. Little Mint, Inc*., 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) (same); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc., 2013 U.S. Dist. LEXIS 152087* (W.D. Wis. Oct. 23, 2013) (same); *Hernandez v. Merrill Lynch & Co*., 2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) (same); *Chance, et al., v. E.I. Dupont*, 1:16-cv-376 (E *Clem v. KeyBank, N.A*., 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (awarding 1/3 of common fund for attorneys' fees); *Henry v. Little Mint, Inc*., 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) (same); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc., 2013 U.S. Dist. LEXIS 152087* (W.D. Wis. Oct. 23, 2013) (same); *Hernandez v. Merrill Lynch & Co*., 2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) (same); *Chance, et al., v. E.I. Dupont*, 1:16-cv-376 (E.D. Tex., March 6, 2019) (approving 1/3 contingency fee in hybrid FLSA Rule 23 case); *Legros v. Mud Control Equip., Co*., C.A. No. 15-1082, 2017 LEXIS 32723 *10 (W.D. La.,March 6, 2017) (approving contingency fee of 40% in collective action); *Barnard et al v. Interek USA, Inc.,* No. Civ. A. 4:11-cv-02198 (S.D. Tex., Jan. 8, 2014); Doc. 184 (same); *Green-Johnson v. Fircroft, et al,* No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013); Doc. 50 (same).

[4] *Id.* at 482, n.4.

specifically address each factor in every case). And the weight to each factor varies when the court is awarding fees from a common fund. *Brown*, 838 F. 2d at 456.

The most important difference in the application of the *Johnson* factors in common fund cases is the emphasis placed on the eighth factor—the result obtained by class counsel. In a common fund case, the result obtained is *the* most important factor and deserves the greatest weight. *Brown*, 838 F.2d at 456 (holding this factor may be given greater weight when "the recovery [is] highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class."). As the Advisory Committee later put it when adopting the 2003 amendments to Rule 23, "[f]or a percentage fee approach to fee measurement, results achieved is the basic starting point." FED. R. CIV. P. 23(h) advisory committee's note (2003).

The other important difference in this common-fund context is the diminished role of the first *Johnson* factor—the time and labor involved. In *Brown*, the Tenth Circuit recognized that the differences between common fund cases and statutory fee cases cautioned against importing a formal lodestar requirement—the usual *starting* point in statutory fee-shifting cases—into common fund cases. Accordingly, the Tenth Circuit recast the nature of the "time and labor" inquiry in common fund cases. While "time and labor" is a factor to be considered, the court need not conduct a lodestar analysis to assess it.[5]

In the context of this case, Class Counsel argues that the result achieved should be given the greatest weight in determining the reasonableness of the fee request. *Brown*, 838 F.2d at 456; *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the

---

[5] *See* Section F, 1, *supra* (citing Tenth Circuit cases in which Courts awarded fees without lodestar cross check); *see also Brown*, 838 F.2d at 456 & n.3; *Chieftain Royalty Co. v. XTO Energy, Inc.,* No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); *Childs v. Unified Life Ins. Co.*, No. 2011 WL 6016486, *15 n.10 (N.D. Okla. 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by Plaintiff's Counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.").

reasonableness of a fee award is the degree of success obtained.") (quotations omitted); *Behrens v. Wometco Enters.*, Inc., 118 F.R.D. 534, 547048 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Further, because the recovery was highly contingent and the efforts of counsel were instrumental in realizing recovery on behalf of the class, this factor should be given even greater weight. *In re Qwest Communications Intern., Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. 2009) (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988).

In determining the reasonableness of attorneys' fees, courts have considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), which stated as follows:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.

*Id.* at 988 (citing NERA Study at 7) (emphasis added).

The NERA Study relied upon in *Shaw* showed that the average result achieved for class members was a small percentage of claimed damages. Unlike many class action settlements that provide little if any actual monetary benefit to the class members, the settlement reached in this case provides real and substantial monetary recovery to the class. This is not a coupon settlement, but rather involves a significant cash recovery and with a substantial average payment per class member, despite the existence of serious disputes as to liability and the appropriateness of class/collective certification. Unless indicated in a supplemental filing before the final approval hearing, the fact that no member of the Settlement Class elected to be excluded from the settlement

or objected to the settlement should bolster the court's confidence in the fairness of the results Class Counsel obtained. *Nakamura*, 2019 WL 2185081, at \*2. Exh. 2, Claims Admin Dec..

While Class Counsel believe that the class claims have substantial merit, if litigation were to proceed, there is, nonetheless, a significant risk that the Settlement Class could recover less than the amount of settlement, or nothing at all. The obstacles to victory on a class-wide basis were numerous and varied. For example, Defendant made clear to Plaintiffs it would rely heavily the language of the NMMWA to establish that Plaintiffs fall outside the reach of that act because he was paid, in part, on a piece rate basis. The risk of getting nothing on an unsettled legal issue where the only decision on it prior to this case went in Defendant's favor, was a huge driving factor in reaching this settlement, for it meant that even if Plaintiffs won at the trial court level, Defendant would have certainly appealed to the Tenth Circuit or to the New Mexico Supreme Court.

Four of the *Johnson* factors examine, in different ways, whether the fee request is consistent with the market for legal representation of this type.[6] This makes sense in that absent Class Members do not have an express, pre-existing attorney-client relationship with ClassPlaintiff's Counsel. In determining how much Class Counsel should be paid for the work done on absent Class Members' behalf, it is appropriate to consider what clients agree to pay their lawyers when a direct attorney-client relationship exists.

Here, after arm's-length negotiations with Class Counsel, Named Plaintiff agreed Class Counsel would represent Plaintiffs on a 40% contingency fee basis. At the time this agreement was reached, Named Plaintiff understood a 40% contingency fee was at or below the market rate. The typical fee award in class actions today is around 40%. *See* § 1, *supra.* A fee agreement negotiated

---

[6] These factors are: (5) the customary fee; (6) whether the fee is fixed or contingent; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

at arm's-length in advance is particularly relevant in a contingency case because it reflects the value of the service to be provided before the full difficulty and uncertainty of the case is known and while the risk of a loss still exists. *See Nieberding v. Barrette Outdoor Living, Inc*., 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (percentage in representation agreement between plaintiff and counsel "provides some market context suggesting that a fee award in this range is a reasonable one.").

Another way of comparing the fee request to the market for comparable legal services is to consider awards in similar cases (*Johnson* factor #12). The fee request in this case is consistent with what many federal courts in this Circuit have awarded in other class actions, and with what many federal courts across the country have granted in similar wage and hour lawsuits. *See* § 1-2, *supra*.

Seven of the *Johnson* factors examine, in different ways, Class Counsel's dedication of time, effort, and skill, and commitment to the case.[7] As noted above, these factors are less important in a common fund case (rather than a fee-shifting case) because the most important determinant of the lawyer's contribution—and therefore the most important factor in setting the fee—is the outcome the lawyer was able to achieve. *See Brown*, 838 F.2d at 456. However, a few of these factors deserve specific attention.

Class Counsel invested significant time and money in this Action with no guarantee of reimbursement or recovery. As experienced class action litigators, Class Counsel knew what needed to be done and what tasks were best calculated to advance the likelihood of certification

---

[7] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (7) any time limitations imposed by the client or the circumstances; (9) the experience, reputation and ability of the attorneys; and (10) the undesirability of the case.

and to marshal the proof needed to prevail in court or in a favorable settlement. That said, the Court knows as well as anyone the challenges and complexity of cases like this and the risk Class Counsel undertook in representing the Class. What *Brown* instructs the judge to do is to satisfy himself that the time and effort of Class Counsel contributed to the result achieved for the Class Members. *Brown*, 838 F.2d at 456.[8]

The other Johnson factors also support approval of the fee request. Although these factors do not merit as much weight as the results obtained factor, each one is addressed by Class Counsel. Here are Class Counsel's views of each factor applied to this case:

1. **Time and Labor**. This is important in statutory fee shifting lodestar cases, but only important here to show the case was not a lay down winner. The Declaration of Class Counsel shows the law firms invested substantial time and labor in researching, investigating, prosecuting, and resolving this case. *Id.*

2. **Novelty and Difficulty**. This case presented a novel issue regarding payment of oil field workers and their potential exemption from the overtime and other requirements of the NMMWA.

   This litigation also required additional analysis and planning on their part regarding the formulas and alleged damage distributions. Accordingly, this case presented difficult and novel questions which Class Counsel represent they spent significant time navigating, and, in the end, to the satisfaction of the Plaintiffs. Such complex cases require more time and effort on their attorneys' part, and Class Counsel believe that the attorneys should be appropriately compensated for accepting the challenge. *Johnson*, 488 F. 2d at 718. Despite these hurdles, Class Counsel contends that they obtained a significant amount of recovery for the Class Members, and that this factor thus weighs in favor of the requested fee.

3. **Skill Required Requisite to Perform the Legal Service Properly.** This case presented a complex, challenging set of factual and legal issues, and Class Counsel contend that the case required counsel with special skills in the difficult areas of large-scale class action litigation and wage and hour law. "[C]lass counsel has extensive

---

[8] In *Fitzgerald Farms, LLC v. Chesapeake Operating, L.L.C.,* No. CJ-2010-38, 2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015), Judge Parsley noted the time-and-labor "factor is the most important in a fee shifting case, its relevance in the contingent fee common fund class actions such as this one is to show that the case was not a lay-down winner where little time was invested and little risk actually assumed." *Id.* at *6. The percentage method for awarding fees rewards good results, promotes efficiency, and aligns the interests of class counsel with the class members. *Id.*

experience representing plaintiffs in both wage and hour and class action lawsuits. Accordingly, class counsel was well equipped to address the unique challenges that defendant's anticipated defenses posed to the ability of the plaintiff class to recover in this case. Class counsel successfully negotiated a structured settlement that provides meaningful recovery for the plaintiff class. The 'skill' and 'experience' factors therefore weigh in favor of the requested fee award." *Blanco v. Xtreme Drilling & Coil Services, Inc.*, 2020 WL 4041456, at \*5 (D. Colo. July 17, 2020).

4. **Preclusion of Other Cases:** Class Counsel represent that their time on this case could have been spent on other worthwhile cases. Courts in this Circuit have recognized the inherent preclusion of other work implicit in litigating large and complex class actions on behalf of workers in wage and hour cases.[9] Here, Class Counsel explain that they spent significant time and resources on this case, remuneration for which was entirely contingent on the outcome of this matter. Class Counsel argue that this factor favors approving the percentage fee award because Class Counsel could have spent those hours on guaranteed fee generating work.

5. **Customary Fee.** "Class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel."[10] Plaintiffs and Class Counsel negotiated and agreed to prosecute this case based on a 40% contingent fee. This fee represents the market rate and is in the "customary fee". Class Counsel contend that this agreed upon fee supports the reasonableness of the fee factor thus favors a finding that plaintiff's fee request is reasonable. *Bailes v. Lineage Logistics, LLC,* No. 15-2457-DDC-TJJ, 2017 WL 4758927, at \*6 (D. Kan. Oct. 20, 2017). As established above, Class Counsel argue that the requested fee award is well within the customary fee awarded in wage and hour class action litigation.

6. **Whether the Fee is Fixed or Contingent**. Class Counsel represent Plaintiffs on a contingency fee basis. The representation agreement entered into between Class Counsel and Plaintiffs provides that, in the event Plaintiffs prevailed, counsel would receive 40% of the overall recovery. Had Plaintiffs not resolved their claims or prevailed at trial, counsel would have received nothing. Courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees: if Class Counsel lose class certification or the merits, that is thousands

---

[9] *See e.g. Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at \*6 (D. Colo. Nov. 13, 2013) ("Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages. There is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts."); *In re Qwest Communications Intern., Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. 2009) ("It is fair to assume… that lead counsel's efforts on this case could have been devoted to other cases which may have been devoted to tother cases which may have proven worthwhile. This assumption, however, does not weigh heavily in my analysis.").

[10] *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (citing *Freebird, Inc.*, 2013 WL 1151264, at \*4).

of hours and many dollars down the drain. Even winning, class counsel may not get paid at all.[11] Although Class Counsel argue that they were able to achieve an excellent result for the class, achieving the outcome was anything but certain when they agreed to take the case on a contingency fee basis.[12]  "This factor weighs in favor of the requested attorneys' fees award, because "[s]uch a large investment of money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Acevedo*, 2019 WL 6712298, at *5 (collecting cases).

7. **Time Limitations Imposed by the Client or Circumstances.**  The "risk for Class Counsel when it committed to a case that would be vigorously litigated for years" is the critical consideration when evaluating this factor.  *In re N.M. Indirect Purchasers Microsoft Corp*., 2007-NMCA-007, ¶ 84.  "It is not the limit placed on counsel's time that is significant…. Rather, it is class counsel's commitment to represent the Class, despite the probability of years of litigation" that is significant to this factor.  *Id.*  Here, Class Counsel represent that they committed to this case knowing that it could be vigorously fought for years and cause significant limitations on Class Counsel's two small wage and hour firms, which collectively employ five attorneys, from representing the class.  Had the settlement not occurred, the case may have taken many more years to get to trial; it also avoids potential decertification issues and appeals on the merits that would have been taken following trial.  Accordingly, Class Counsel contend that this factor weighs in favor of approving the fee because Class Counsel have committed themselves to representing the Class, despite the known probability of years of litigation and potential appeals.  *Id.*

8. **Amount in Controversy and Result Obtained**.  As detailed above, Class Counsel's position is that this is the most significant factor in awarding attorneys' fees in a common fund case.  Here, Class Counsel contend that they obtained a substantial payment on behalf of the Class Members.  "Class counsel obtained this result despite serious questions as to whether the class could be certified under Fed. R. Civ. P. 23, whether the class could ultimately prevail on the merits of its claims, and what amount of damages would be available.  Given the risks involved, the Court should find that the relief provided by the settlement represents an excellent result for the settlement class."  *Blanco v. Xtreme Drilling & Coil Services, Inc*., 16-CV-00249-PAB-SKC, 2020 WL 4041456, at *6 (D. Colo. July 17, 2020) (citing *Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement)).

9. **Experience, Reputation, and Ability of Counsel**.  This factor is intended to reward counsel for devoting the talent, experience, and specialization necessary to successfully

---

[11] *See, e.g.*, *Schell v. Oxy USA, Inc.*, 814 F.3d 1107, 1112 & 1125-26 (10th Cir. 2016) (despite winning summary judgment in favor of plaintiff class after seven years of litigation, no attorney's fee was awarded).

[12] *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight").

try a complex class action case. *Johnson*, 488 F. 2d at 718-19. Class Counsel represent that they have extensive experience and demonstrated ability litigating wage and hour collective and class actions. Class Counsel contend that their knowledge and experience significantly contributed to a fair and adequate settlement of this litigation. Class Counsel's position is that the dedication of their expertise to this litigation, and the skill required to obtain the substantial settlement fund created for the Class, supports the requested percentage fee award.

10. **Undesirability of the Case.**[13]  Because Plaintiffs did not have the resources to hire counsel, Class Counsel contend that this case could only have been litigated via a contingency fee agreement. The "undesirability" of this case to the bar is heightened by the complexity of the legal issues involved and because, under Defendant's theory of the case, Plaintiffs and the Class members would have been owed zero. Moreover, the legal theories involved required substantial expertise in the wage and hour field— which most attorneys lack—which would have prevented them from understanding the nuances of the arguments asserted, determining whether the Plaintiffs may have had viable claim, or evaluating the potential damage awards available to the Class Members in this case. Had the case not settled, Plaintiffs would have litigated this case without any promise of success and a substantial chance of receiving nothing in the case.[14] Accordingly, Class Counsel contend that this factor weighs in favor of approving the requested fee.

11. **Nature and Length of Professional Relationship with Client.**  Class Counsel's position is that this factor is meant to reflect any discounted rate that a lawyer might ordinarily charge a long-standing client from whom the lawyer might expect continued or repeated business. *Johnson*, 488 F. 2d at 719. Here, Class Counsel had no previous relationship with the class or the class representatives other than the *Guiterrez* case which was a related case involving the same issues. However, regarding the nature of the relationship between Plaintiffs and their counsel, Class Counsel note that the representation agreement entered into between counsel and Plaintiffs entitled Class Counsel to a 40% of an overall recovery.

12. **Awards in Similar Cases**.  Class Counsel contend that a review of fee awards in other

---

[13] "Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011).

[14] *Acevedo,* 2019 WL 6712298, at *5 ("[T]he time and effort that this case has taken and the complexity of the issues would make it undesirable to many attorneys. Under Defendant's theory, the Plaintiff and Class Members would be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class Members. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, at every step of the litigation, Defendant could have succeeded. I accordingly find that this factor weighs in favor of approving the requested award for attorneys' fees and costs.").

class action lawsuits, and wage and hour lawsuits in particular, establishes the requested percentage fee award is well within the range of such awards. *See* #5, *supra*;

Because the *Johnson* factors weigh in favor of approving the specific percentage requested as the fee award and the percentage is well within the general approved range for similar complex class action cases, the request for 40% of the common fund is reasonable and should be approved by the Court. Defendant has indicated its agreement that the requested fee is reasonable and does not otherwise oppose Plaintiffs' request.

## VII.    CONCLUSION

For the reasons set forth *supra*, the Parties request the Court (1) enter an interim order, which becomes a final order 30 days after entry, approving the Settlement Agreement as fair, reasonable, and adequate, subject to any objections from Class Members and the submission of a Final Declaration from the Claims Administrator; (2) award attorneys' fees in the amount of 40% of the common fund; (3) approve litigation expenses and taxable costs of up to $15,000, (4) approve a service award for Named Plaintiff of $7,500, and (5) dismiss the matter with prejudice but retain jurisdiction to address an issues with implementing the Settlement Agreement.

4825-5511-0141.1 / 096219-1001