IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM KEY,

      Plaintiff,

v.                                                                                                              No. CIV 17-1171 RB/KRS

BUTCH'S RAT HOLE & ANCHOR
SERVICE, INC.,

      Defendant.

**MEMORANDUM OPINION AND INTERIM ORDER**

This matter is before the Court on the Joint Motion [for] Final Approval of Class and Collective Action Settlement, filed on January 13, 2022. (Doc. 102.) The Court held a final fairness hearing on January 20, 2022. (*See* Doc. 105.) The primary issues before the Court are: (1) whether the proposed settlement is fair and reasonable; (2) whether the incentive award of $7,500 to the named plaintiff is fair, reasonable, and adequate; and (3) whether the requested attorney fee award of 40% of the Settlement Amount, in addition to litigation expenses and taxable costs up to $15,000, is reasonable. Having reviewed the parties' submissions and heard the arguments of counsel, the Court finds that the proposed settlement and the incentive award are fair, reasonable, and adequate, and that an attorney fee award of 33.3%, together with litigation expenses and taxable costs up to $15,000 is reasonable.

**I.     Background**

Defendant is a Texas oilfield service company that provides services to oil and gas industry customers. (*See* Docs. 1 (Compl.) ¶ 2; 20 at 2 ¶ 1; 20-1 ¶ 2.) Defendant employed William Key (the named plaintiff) from November 2014 through August 2016. (Doc. 29-1 ¶ 1.) Key filed a class action complaint alleging that Defendant failed to pay certain "non-exempt workers" overtime

1

hours in violation of the New Mexico Minimum Wage Act (NMMWA), N.M. Stat. Ann. § 50-4-22(D). (*See* Compl. ¶¶ 2–6, 8.) Key sought damages on behalf of himself and on behalf of the putative class. Defendant contends that it properly paid all class members on a "piece rate" basis, which exempted them from the NMMWA. (*See, e.g.*, Doc. 9.)

This case is related to litigation that was filed and concluded in Texas. *See Gutierrez v. Butch's Rat Hole & Anchor Service, Inc.*, No. 7:2016-cv-00314 (W.D. Tex.). *Gutierrez* involved a claim for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201–19, and the parties settled the case in 2017. (*See* Doc. 102-1 ¶ 9.) The *Gutierrez* settlement specifically excluded the claim for unpaid overtime wages under the NMMWA. (*Id.*)

Key filed this Complaint in November 2017. (Doc. 1.) The parties engaged in discovery beginning in March 2018, and Defendant filed a motion for partial summary judgment in September 2018. (*See* Docs. 18; 20.) The Court denied Defendant's motion. (*See* Docs. 49.) The Court granted a joint motion to stay proceedings on September 25, 2018, and the parties began to work toward a settlement. (*See* Docs. 55; 102-1 ¶ 12.) "During the course of the settlement discussions, the Parties exchanged additional information on an informal basis, including a damage model which was based on the information provided in this case and in the *Gutierrez* litigation." (Doc. 102-1 ¶ 12.)

On August 27, 2019, the parties engaged in mediation with Jack Wisdom, a mediator with considerable experience in wage and hour cases. (*Id.* ¶ 13.) "At the end of the mediation, [Wisdom] issued a mediator's proposal and gave the Parties time to consider the proposal." (*Id.*) "On October 29, 2019, the Parties informed the Court that they [had] reached an agreement and [would] begin preparing the settlement documents." (*Id.* (citing Doc. 72).) The Court set a February 14, 2020 deadline for the parties to file the necessary documents. (Doc. 74.)

Key filed an Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement on March 5, 2020. (Doc. 77.) The Court granted the motion and set a final approval hearing for November 16, 2020. (Doc. 79.) The parties requested several extensions due to delays in finalizing and processing the settlement. (*See, e.g.*, Docs. 80–83; 85–89; 91; 93.) Eventually, the claims administrator mailed the court-approved notice to the 160 putative class members. (*See* Doc. 99.) No objections were received. (Doc. 102-2 ¶ 10.)

## II.     The Court will approve the parties' settlement agreement.

"Compromises of disputed claims are favored by the courts." *Acevedo v. Sw. Airlines Co.*, No. 1:16-CV-00024-MV-LF, 2019 WL 6712298, at *2 (D.N.M. Dec. 10, 2019), *R&R adopted*, 2020 WL 85132 (Jan. 7, 2020) (quoting *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910)). "In the class action context in particular, there is an overriding public interest in favor of settlement because settlement of complex disputes minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Id.* (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (quotation marks omitted)). "Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement of the claims of a certified class." *Id.* "The authority to approve a settlement of a class . . . action is committed to the sound discretion of the trial court." *Id.* (quoting *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Id.* (quoting *Jones*, 741 F.2d at 324).

In determining whether a settlement is fair, reasonable, and adequate, the Tenth Circuit directs courts to analyze four factors:

> (1)   whether the proposed settlement was fairly and honestly negotiated;
> (2)   whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (citations omitted).

### A. The proposed settlement was fairly and honestly negotiated.

The Court is satisfied that the settlement agreement is the product of fair and honest negotiations. The parties "have vigorously advocated their respective positions throughout the pendency of the case[,]" including thorough briefing on a contested issue regarding whether the class members were exempt from the NMMWA in a summary judgment motion. (Doc. 102 at 11 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)).) The parties worked toward settlement for months, with counsel "discussing a framework for settlement" based on the *Gutierrez* case even before they met with the mediator. (*See* Doc. 102 at 12.) Counsel gathered and reviewed detailed payroll records to create a damage model to use at mediation. (*Id.*) The parties started "far apart" but came to an agreement with the help of an experienced mediator at a full-day mediation. (*See id.*) These facts show that the settlement process was open, fair, and honest. "Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *See Lucas*, 234 F.R.D. at 693 (citations omitted).

### B. Serious questions of law and fact exist.

Although the Court need not evaluate the merits of the parties' dispute to approve the settlement agreement, it is clear that "serious questions of law and fact . . . exist such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. at 693–94. For example, the parties still disagree about whether Defendant "properly classified Plaintiffs as being outside the minimum wage and overtime provisions of the NMMWA." (Doc. 102 at 13.) To determine

this issue, the Court would have needed to conduct "a detailed analysis of the job duties performed by the Plaintiffs" along with an analysis of how class members were paid. (*Id.* at 13–14.) Depending on how the Court resolved the issue, the Plaintiffs were at risk of receiving nothing. (*See id.* at 14.) The Court finds that serious factual and legal questions remained that could have serious implications for either side had the matter gone to trial. This factor weighs in favor of settlement.

        **C.**      **The value of immediate recovery outweighs the possibility of future relief.**

This matter has been pending for over four years. The parties would incur both significant risks and costs to go to trial. "By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief." *Acevedo*, 2019 WL 6712298, at *3 (quoting *Lucas*, 234 F.R.D. at 694). "An evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties." *Id.* The parties recognize that pursuing this case to trial might result in an all-or-nothing proposition for Plaintiffs. (*See* Doc. 102 at 15.) "The Settlement Fund provides for recovery of an appropriately discounted recovery even *after* the payment of attorney's fees, litigation expenses, administration costs, and service payments." (*Id.* (citing Doc. 102-1 ¶ 29).) Thus, this factor weighs in favor of the settlement.

        **D.**      **Counsel for the parties believe the settlement is fair and reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Acevedo*, 2019 WL 6712298, at *3 (citations omitted). J. Derek Braziel, counsel for Plaintiffs, submits his qualifications and experience in this area of the law. (*See* Doc. 102-1 ¶¶ 2–8.) He believes the settlement agreement is fair and reasonable. (*Id.* ¶ 31.) Defendant's attorney agreed at the hearing that there are issues on which the parties disagree, both parties compromised in coming to a settlement, and Defendant is satisfied with the agreement. Because the attorneys in this action,

all of whom are experienced and competent attorneys, support the settlement agreement, this factor favors approval.

In sum, the Court finds that the settlement agreement is fair, reasonable, and adequate.

## III. The Court will approve the requested incentive award for the named plaintiff.

Plaintiff's counsel moves the Court to approve an incentive award to Key, the named plaintiff, in the amount of $7,500. (Doc. 102 at 16–17, 34.) "Incentive awards are typical in class action cases." *Acevedo*, 2019 WL 6712298, at *4 (citing See 4 William B. Rubenstein et al., Newberg on Class Actions § 11:38 (4th ed. 2008)). "Courts have stated that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class." *Id.* (citing *UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Mining Corp.*, 352 F. App'x 232, 235–36 (10th Cir. 2009)) (subsequent citation omitted). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id.* (citations omitted).

Here, the parties represent that Key "was among the most active participants in the *Gutierrez* matter and has stayed actively involved in this matter." (Doc. 102 at 16.) Key "provided factual information and otherwise assisted counsel with the prosecution of the litigation." (*Id.* (citing Doc. 102-1 ¶ 30).) Braziel asserts that Key "works in an industry in which the number of companies with [his job] position is limited[,]" and "lost job opportunities [are] very real" due to his participation in this lawsuit. (*Id.* (citing Doc. 102-1 ¶ 30).)

The parties agree that "the requested incentive award is reasonable and in line with similar awards approved in other cases." (*See* Doc. 102 at 17 (citing, *e.g.*, *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011)

6

($10,000 incentive award); *Lucken Family Ltd. P'ship*, No. 09-cv-01543 REB-KMT, 2010 WL 2836508, at *2 (D. Colo. Dec. 22, 2010) ($10,000 incentive award)).) The Court notes that the Notice of Class Action Settlement mailed to the class members included information about the proposed incentive award. (*See* Doc. 102-3 at 2.) The Court agrees that the incentive award is reasonable and will approve it.

### IV.     The Court will approve attorneys' fees in the amount of 33.3% of the settlement fund.

Plaintiff's counsel requests an attorney fee award of 40% of the common fund. (*See* Doc. 102 at 34.) "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under Tenth Circuit precedent, the Court analyzes 12 factors in assessing the attorney fee award:

> the time and labor required, the novelty and difficulty of the question presented by the case, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorneys due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases.

*Gottlieb v. Barry*, 43 F.3d 474, 483 n.4 (10th Cir. 1994) (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The factors may not apply in every case. *See Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

1. Time and Labor: Here, counsel spent a considerable amount of time and labor researching and resolving this case, including the work involved in analyzing damage distributions. (Doc. 102 at 17–18 (detailing the "unpaid work to date"), 30.) The Court notes, however, that this matter has been delayed, and the class members have been awaiting settlement, for over 14 months solely at the request of Plaintiff's counsel. (*See* Docs. 79 (initial order setting final hearing for Nov. 16, 2020); 80 (Braziel's first motion to extend); 82 (second motion to

extend); 87 (third motion to extend); 93 (Oct. 13, 2021 order vacating final hearing due to Plaintiff's failure to finalize the steps necessary to be ready for the hearing).) Thus, the passing of time from the filing of the complaint does not necessarily reflect the extent of time and labor involved.

2. Novelty and Difficulty: The lawsuit presented a novel issue regarding whether these class members were owed overtime wages for their work under the NMMWA. (Doc. 102 at 30.)

3. Skill Required: Because of the issues involved, the parties agree that counsel required special skills in this area of the law. (*See id.* at 30–31.)

4, 6, 7. Preclusion of Other Cases, Contingent Fee, Time Limitations Imposed: The attorneys who spent time on this case were precluded from working on other worthwhile lawsuits, and remuneration was contingent on this lawsuit's outcome. (*See id.* at 31.) Had the case not settled and Plaintiffs lost, class counsel would have received nothing, yet they committed themselves to the case regardless of risk. (*See id.*)

5, 12. Customary Fee and Awards in Similar Cases: "Class actions typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel." (*Id.* (quoting *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015)).) Here, class counsel negotiated a 40% contingent fee and represents that it "is well within the customary fee awarded in wage and hour class action litigation." (*Id.*) While 40% is within the range of possibilities that has been awarded, it is on the high end. With the help of Plaintiff's counsel, the Court has reviewed fee awards in 12 FLSA and NMMWA cases in this district. All but four of the cases involved fee awards under 40%.[1] The mean fee award was 31.9%.

---

[1] *See, e.g.*, (1) *Lopez v. El Mirador, Inc.*, 16cv-01257 RB-KBM, Mem. Op. & Order (D.N.M. Apr. 2, 2018) (16.51%); (2) *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *3 (D.N.M. Jan. 31, 2011)

"[C]ourts do not blithely grant the percentage requested by prevailing counsel." *Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1096 (D.N.M. 1999). And from the survey of cases noted above, it seems that courts in this district implicitly agree that fee awards in class actions average around one-third of the recovery. *See* n.1; *see also* § 15:83 Applying the percentage method—Reasonableness of percentage—Empirical data on percentages awarded, 5 Newberg on Class Actions § 15:83 (5th ed.) ("percentage awards in class actions are generally between 20–30%, with the average award hovering around 25%"). The Court finds that a fee award of 33.3% is fair and reasonable.

8. <u>Result Obtained</u>: This is the most important factor courts consider. *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012). Here, Plaintiff's counsel argues "that they obtained a substantial payment on behalf of the Class Members . . . despite serious questions as to whether the class . . . could ultimately prevail on the merits of its claims . . . ." (Doc. 102 at 32 (quoting *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, 16-cv-00249 PAB/SKC, 2020 WL 4041456, at *6 (D. Colo. July 17, 2020)).) The Court agrees that counsel obtained a significant win for the class.

---

(18.77%); (3) *Rodarte v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 14cv0193 JAP-SCY, Joint Mot. to Approve Am. Notices of Settlement to the Class Groups (D.N.M. Sept. 25, 2015) and Ord. Approving (Nov. 9, 2015) (21.4%); (4) *Montgomery v. Cont'al Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305 (D.N.M. April 9, 2021) (31.47%); (5) *Cisneros v. EP Wrap-It Insulation, LLC*, 19cv0500 GBW-GJF, Pls. Mot. for Final Approval of Class Action Settlement (D.N.M. Dec. 30, 2021) (33% requested; not yet approved); (6) *Barela v. Citicorp USA Inc.*, 11cv506 KG/GBW, Joint Mot. to Approve Settlement (D.N.M. Sept. 4, 2014) & Final Order & Jgmt (D.N.M. Sept. 15, 2014) (33%); (7) *Acevedo*, 2019 WL 6712298 and 2020 WL 85132 Order Adopting (Jan. 7, 2020) (33.3%); (8) *Candelaria v. Health Care Serv. Corp.*, 17cv404 KG-SMV, Stip. Proposed Findings & Recommended Disposition Regarding Joint Mot. for Interim/Final Approval of Class & Collective Action Settlement (D.N.M. Oct. 30, 2020) and Order Gr. (Nov. 4, 2020) (35%); (9) *Price v. Devon Energy Corp.*, 20cv0316 KWR-GJF, Order Gr. Mot. to Approve Settlement Agreement, Reasonable Atty's Fees, & Pl.'s Service Award (D.N.M. May 24, 2021) (40%); (10) *Licon v. BOS Sols., Inc.*, 19cv1130 JB-KK, Joint Mot. to Approve FLSA Settlement & Dismiss Lawsuit with Prejudice (D.N.M. Feb. 26, 2020) and Order Gr. (Feb. 26, 2020) (40%); (11) *Cavillo v. Bull Rogers, Inc.*, 16cv0919 WJ-GBW, Joint Mot. for Approval of Collective Action Settlement & Dismissal (D.N.M. Feb. 1, 2019) and Order Approving (Feb. 12, 2019) (40%); (12) *Landry v. Swire Oilfield Servs., L.L.C.*, 16cv0621 JB-LF, Joint Mot. for Approval of Collective Action Settlement (D.N.M. Aug. 27, 2018) and Order Gr. (Feb. 19, 2019) (40%).

9. Counsel's Experience and Ability: The Court agrees that Plaintiff's counsel have demonstrated experience and ability litigating this type of lawsuit.

10. Undesirability of Case: "Because Plaintiffs did not have the resources to hire counsel, Class Counsel contend that this case could have only been litigated via a contingency arrangement." (Doc. 102 at 33.) The case was even less desirable because of the complexity of the issues and because "under Defendant's theory of the case, Plaintiffs and the Class members would have been owed zero." (*Id.*)

11. Nature and Length of Relationship: Plaintiffs did not have a prior relationship with class counsel that would have afforded any discounted rate. (*See id.*)

The Court agrees that class counsel was competent and obtained a substantial award for the class. However, this matter was not so overly complicated or risky as to merit a 40% attorney fee. The Court finds that the *Johnson* factors weigh in favor of approving an award that is less than the 40% requested. The Court will approve an attorney fee award of 33.3% of the common fund. The Court further approves litigation expenses and taxable costs of up to $15,000 to be approved by the claims administrator.

**THEREFORE,**

**IT IS ORDERED** that the Joint Motion [for] Final Approval of Class and Collective Action Settlement (Doc. 102) is **GRANTED** in part: the Court finds that the Settlement Agreement is fair, reasonable, and adequate; the Court approves an incentive award to Key, the named plaintiff, in the amount of $7,500; the Court approves attorneys' fees in the amount of 33.3% of the settlement fund together with litigation expenses and taxable costs of up to $15,000 to be approved by the claims administrator;

**IT IS FURTHER ORDERED** that this Interim Order will become final 30 days after entry, subject to any objections from class members and the submission of a final declaration from the claims administrator. If any issue or objection is raised within 30 days, the settlement will remain in interim approval status until the matters are addressed;

**IT IS FURTHER ORDERED** that after this order is final, this matter is dismissed with prejudice. The Court will, however, retain jurisdiction to address any issues that may arise in implementing the Settlement Agreement.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE